COMMONWEALTH *vs.* JOHN DUCEY & others.

Suffolk. January 9. — February 26, 1879.

The St. of 1875, *c.* 99, § 11, conferring upon the mayor and aldermen of a city, or the selectmen of a town, or any police officer or constable "specially authorized by them," power to "enter upon the premises of any person licensed to sell under this act, to ascertain the manner in which such person conducts his business, and to preserve order," is a reasonable exercise of the police power of the Commonwealth, and is constitutional.

The board of police commissioners of the city of Boston, being vested by the St. of 1878, *c.* 244, with all the powers given to the mayor and aldermen by the St. of 1875, *c.* 99, an order of the board of police commissioners of the city of Boston, under the St. of 1878, *c.* 244, by which the police officers of the city are "specially appointed and authorized" to enter at any time upon the premises of any person licensed to sell intoxicating liquors under the St. of 1875, *c.* 99, to ascertain the manner in which such person conducts his business, and to preserve order, is legal and valid.

INDICTMENT in two counts. The first count charged that the defendants, on August 25, 1878, at Boston, "with force and arms, in and upon one Henry Dawson, then and there in the peace of said Commonwealth being, an assault did make, he the said Dawson also then and there being a peace officer, called a police officer, and then and there also being in the due and lawful discharge of his duties as such officer." The second count charged a similar assault upon Thomas A. Simpson, also a police officer.

Trial in the Superior Court, before *Putnam,* J., who allowed a bill of exceptions in substance as follows :

On July 9, 1878, the board of police commissioners of the city of Boston passed the following order : " Ordered, that the police officers of the city of Boston be and they are hereby specially appointed and authorized to enter at any time upon the premises of any person licensed to sell intoxicating liquors, under the provisions of chapter 99 of the acts of the year 1875, to ascertain the manner in which such person conducts his business, and to preserve order; and also do all other acts which officers so appointed are authorized by said statutes to do or perform." This order was communicated to the chief of police of the city, who forthwith sent a copy to each captain of police, with a written order directing it to be communicated to all the officers, which was

done. Under this order, the captain of the police station to which Dawson and Simpson were attached, directed them to go out on Sunday, August 25, 1878, and visit all liquor shops which they could find open, not designating any particular places; and instructed them to enter all licensed places found open, and to enter them for the purpose of ascertaining how the business was conducted.

On the day above named, Dawson and Simpson, while passing a certain saloon, saw several persons going into an outside door which opened from an entry to the street, through which entry people could pass to apartments above, not occupied by the proprietor of the saloon, and also to a side room, communicating by a door with the bar-room, where liquors were sold. The proprietor had a license to sell intoxicating liquors, which prohibited him from selling on the Lord's day. Both of these rooms were under the control of the proprietor of the saloon, and were covered by the license, and were part of the licensed premises.

The officers testified that, suspecting that liquors were being sold, and for the purpose of ascertaining what was going on, they went into the entry, and followed two men through a door which led from the entry into the side room described above; that they passed from the entry into the side room so quickly that they could not have been prevented from entering by anybody in the side room; that there were seven or eight men in this side room, among whom were the defendants; that when the officers entered the side room they started across it to enter the bar-room by a door that communicated with the side room, and were prevented by the defendants, and pushed by them into the entry.

It was agreed that, if the officers had no legal authority to enter these premises, no more force was used by the defendants than was reasonably necessary to prevent them from entering.

The defendants asked the judge to instruct the jury as follows: "1. The officers entered without authority, and were trespassers. 2. The authority delegated by the police commissioners to all police officers, to enter at their own discretion, at any time, any licensed place, or all licensed places, was a general authority, and not a special authority, and in contravention of the spirit of the law. 3. The authority given by the board of police commission-

ers of the city of Boston, to visit all places licensed to sell liquor, to see how said persons conduct their business, is not such authority as was intended by the Legislature. The particular shop or place, the owner of the shop or place, the time of such visit, and the officers authorized to make such visit, should be specially designated. Such a special order would be contrary to the elementary principles, and in direct violation of the constitutional right of the citizen, as set forth in the Declaration of Rights. 4. The authority given to the board of police commissioners by the St. of 1875, *c.* 99, § 11, and by said commissioners delegated to the police officers of the city of Boston, to enter at any time upon the premises of any person licensed to sell liquor, to see how said business is carried on, does not authorize an officer to break and enter the licensed premises, after a demand by an officer to enter such premises; and a refusal of entrance to the officer by the owner thereof, or his agent or agents, would not justify a forcible entry by the officer."

The judge declined to give the instructions asked for; but submitted the case to the jury under instructions which authorized them to find that, upon the evidence, the officers had the legal right to enter the premises for the purposes for which and in the manner in which they did enter.

The jury returned a verdict of guilty; and the defendants alleged exceptions to the refusal to rule as requested.

*J. W. Fox,* for the defendants.

*C. R. Train,* Attorney General, for the Commonwealth.

GRAY, C. J. Under the St. of 1878, *c.* 244, the board of police commissioners of the city of Boston is vested with all the powers and duties given to and imposed upon the mayor and aldermen by the St. of 1875, *c.* 99. To determine the construction and effect of the order of the board of police commissioners, in the case before us, it is therefore necessary to consider the provisions of the earlier statute, which, so far as they are material to the present inquiry, are as follows:

Licenses to sell intoxicating liquors may be granted annually by the mayor and aldermen of cities or the selectmen of towns; and every license "shall name the person licensed, shall set forth the nature of the license and the building in which the business is to be carried on," and "shall be expressed to be subject to the

following conditions: First. That the provisions in regard to the nature of the license, and the building in which the business may be carried on under it, shall be strictly adhered to. Second. That no sale of spirituous or intoxicating liquor shall be made between the hours of twelve at night and six in the morning, nor during any part of the Lord's day, except that, if the licensee is also licensed as an innholder, he may supply such liquor to guests who have resorted to his house for food or lodging. Third. That no liquor, except such as is of good standard quality and free from adulteration, shall be kept or sold on the premises described in the license. Fourth. That no sale or delivery of liquor shall be made on the premises described in the license to a person known to be a drunkard, or to an intoxicated person, or to a minor. Fifth. That there shall be no disorder, indecency, prostitution, lewdness or illegal gaming on the premises described in the license, or on any premises connected therewith by any interior communication." And each license to sell liquors to be drunk on the premises "shall be subject to the further condition that the licensee shall not keep a public bar, and shall hold a license as an innholder or common victualler." St. 1875, c. 99, §§ 4, 6, 7.

By § 9, each licensee is required to give bond, the condition of which, according to the form set out in the statute, is that he "shall well and truly comply with all the provisions of the act under which said license is issued, and also shall pay all damages which shall be recovered from him under and pursuant to the provisions of said act." And by § 12, the mayor and aldermen or selectmen, "after notice to the licensee, and reasonable opportunity for him to be heard by them, or by a committee of their number, may declare his license forfeited, upon proof satisfactory to them that he has violated, or permitted to be violated, any of the conditions thereof."

Section 11 is as follows: "The mayor and aldermen of a city, or the selectmen of a town, or any police officer or constable specially authorized by them, may at any time enter upon the premises of any person licensed to sell under this act, to ascertain the manner in which such person conducts his business, and to preserve order. And such police officers or constables may at any time take samples for analysis from any liquors kept on such premises, and the vessel or vessels containing such samples shall

be sealed on the premises by the seal of the vendor, and shall remain so sealed until presented to the assayer for analysis. The city or town shall pay for the samples so taken; provided such liquors are found to be of good quality, and free from adulteration.'·

The power conferred by this section upon the officers therein named, to "enter upon the premises of any person licensed to sell under this act, to ascertain the manner in which such person conducts his business, and to preserve order," does not authorize any search or seizure of person or property; and is therefore not open to the objection (which would apply as strongly to the mayor and aldermen or selectmen as to inferior officers) of not providing for a previous oath or affirmation, and a special designation of the persons or objects of search, arrest or seizure, as required by the fourteenth article of the Declaration of Rights. It is but a reasonable exercise of the police power, to preserve the public peace, and to see that the business carried on in the buildings described in the several licenses is conducted according to the conditions of the license, the provisions of the statute under which it is granted, and the stipulations of the bond executed by the licensee himself. As it would be manifestly impracticable, in the cities and the large towns of the Commonwealth, that this duty should be performed by the mayor and aldermen or selectmen in person, they are empowered to commit its performance to so many of the police officers or constables as they may think fit. The words "specially authorized" merely denote the authority to be derived from the order of the mayor and aldermen or selectmen, as distinguished from the powers vested in police officers and constables by virtue of their offices under general laws. To construe these words as requiring every order of the mayor and aldermen or selectmen, authorizing an entry by constables or police officers upon the premises of licensees, to state the names of the officers and to designate particular buildings and times, would be to create unnecessary embarrassment, if not to defeat the whole purpose of the provision.

The order of the board of police commissioners, of which the defendants complain, was therefore legal and valid, and authorized the police officers to enter upon the premises in question; and the defendants, in opposing and obstructing their entry, were

guilty of an assault. The evidence in this case does not require us to consider the validity of the provision of the statute for the taking of samples of liquors, nor whether the officers would have the right, after demanding and being refused admittance, to break outer doors. No objection to the form of the indictment appears to have been taken in the court below, or is open in this court. *Commonwealth* v. *Kane*, 108 Mass. 423, 425. And the exceptions alleged are not to the instructions given, but only to the refusal to give the instructions requested. *Thayer* v. *Boston*, 124 Mass. 132, 148. As, for the reasons above stated, those instructions were rightly refused, the

*Exceptions must be overruled.*