COMMONWEALTH *vs.* INTOXICATING LIQUORS, THOMAS H. MCCARTHY, claimant.

Plymouth.   October 18, 1898. — January 5, 1899.

Present: FIELD, C. J., KNOWLTON, BARKER, & HAMMOND, JJ.

*Statute — Constitutional Law — Transportation of Liquors into Non-license Cities and Towns — Forfeiture.*

The St. 1897, c. 271, entitled "An Act to further regulate the transportation of spirituous and intoxicating liquors into no-license cities and towns," is well within the right of the State under the police power to legislate as to intoxicating or spirituous liquor, and is constitutional.

Section 2 of St. 1897, c. 487, which declares that the provisions of Pub. Sts. c. 100, relating to the seizure and forfeiture of intoxicating liquors shall apply to St. 1897, c. 271, regulating the transportation of intoxicating liquors into no-license cities and towns, is to be construed as making the general scheme of enforcing forfeiture found in Pub. Sts. c. 100, §§ 30–46 inclusive, applicable to the forfeitures under St. 1897, c. 271, with such modifications as required by the ground of forfeiture, and as thus interpreted is sufficiently definite, and is constitutional.

COMPLAINT to the Police Court of the city of Brockton, under St. 1897, c. 271, entitled " An Act to further regulate the transportation of spirituous and intoxicating liquors into no-license cities and towns," and acts in amendment thereof, for the seizure and forfeiture of certain vessels and intoxicating liquors contained therein for not being marked as required by that statute. At the trial in the Superior Court, before *Hopkins,* J., the following facts were agreed upon.

The New York and Boston Despatch Express Company, in whose possession the liquors were found, and from which they were seized, is a corporation regularly and lawfully conducting a general express business between Boston and Brockton. There was delivered to them to be transported into Brockton a barrel containing ten dozen bottles of ale, the barrel being marked on the outside simply, " T. H. McCarthy, Brockton, Mass."; and not being marked with the address by street and number of the claimant, nor with the name and address of the seller, nor with the kind and amount of liquor contained therein. Licenses of the first five classes named in the Public Statutes had not at the time of the seizure been granted in Brockton; and the liquors were not intended by McCarthy to be sold in violation of law, but were intended for his private use.

The claimant requested the following rulings:

" 1. That St. 1897, c. 271, under which the vessels and liquors complained against were seized, is in violation of the fundamental principles of natural right and justice, which guarantee to every man the right to acquire property and enjoy it in any way consistent with the equal rights of others, free from all restrictions and regulations, unless the same are imperatively required by public necessity for the safety, comfort, and well being of society, and is unconstitutional and void. 2. That in making said chapter 271 the Legislature exceeded the power conferred upon it by Article 4 of Chapter 1 of the Constitution of Massachusetts, which gives it full power and authority to pass and make only *wholesome and reasonable* laws and statutes, and is unconstitutional and void. 3. That said chapter 271 is in violation of Section 1 of Article 14 of the Amendments to the Constitution of the United States, which declares that ' No State shall make or enforce any law which shall abridge the privileges

or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty, or property without due process of law,' and is unconstitutional and void. 4. That § 3 of chapter 271, which provides that all vessels or packages containing intoxicating liquors addressed and marked contrary to the particular provisions of § 1 of the same chapter, or to a fictitious person, or to a person unknown or who cannot be found, shall, with the liquor contained therein, be seized and adjudged forfeited to the Commonwealth, is in violation of Article 1 of the Declaration of Rights of the Constitution of Massachusetts, which declares that 'All men . . . have certain natural, essential, and unalienable rights, among which may be reckoned . . . that of acquiring, possessing, and protecting property,' and is unconstitutional and void. 5. That said § 3 is in violation of Article 12 of the Declaration of Rights of the Constitution of Massachusetts, which declares that 'No subject shall be . . . deprived of his property, immunities, or privileges, . . . or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land,' and is unconstitutional and void. 6. That said § 3 is in violation of Article 14 of the Declaration of Rights of the Constitution of Massachusetts, which declares that 'Every subject has a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions,' and is unconstitutional and void. 7. That said § 3 is in violation of Article 26 of the Declaration of Rights of the Constitution of Massachusetts, which declares that 'No magistrate or court of law shall . . . impose excessive fines, or inflict cruel or unusual punishments,' and is unconstitutional and void. 8. That the provisions of Pub. Sts. c. 100, which by § 2 of St. 1897, c. 487, shall apply to the provisions of said chapter 271, and regulates all seizures and forfeitures of packages and liquor under said chapter, do not clearly and unequivocally require and direct such a course of proceedings as must be specifically prescribed in order to satisfy those requirements of the Declaration of Rights in the Constitution of Massachusetts which declares, Article 1, 'All men . . . have certain natural, essential, and unalienable rights,' among others 'that of acquiring, possessing, and protecting property.' Article 10, 'Each individual . . . has a right to be

protected by it in the enjoyment of his . . . property, according to standing laws.' Article 11, 'Every subject . . . ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without being obliged to purchase it; completely and without any denial; promptly, and without delay; conformably to the laws.' Article 12, ' No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs that may be favorable to him ; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election. And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers or the law of the land,' and is unconstitutional and void. That for each and all of the above reasons the vessels and liquors complained against were wrongfully seized, and should be ordered returned to the claimant."

The judge refused to give any of the rulings requested, and the claimant alleged exceptions. The jury found upon the issue submitted to them that the package contained intoxicating liquors which were addressed contrary to the provisions of St. 1897, c. 271. The court rendered judgment that the liquor and the vessels containing it were forfeited to the Commonwealth.

*R. W. Nutter*, for the claimant.

*R. O. Harris*, District Attorney, for the Commonwealth.

HAMMOND, J. Subject to the power of Congress over foreign and interstate commerce, the right of a State to regulate by reasonable laws the manufacture, sale, or transportation of spirituous or intoxicating liquors within its own territorial limits is established by numerous decisions, both of State and national courts. Such a law is not inconsistent either with the Constitution of our State or that of the United States. It comes well within the authority called the police power, subject to which, in various ways, all private property is held, and it is unneces-

sary to restate here the principles upon which it rests.  *Commonwealth* v. *Blackington*, 24 Pick. 352.  *Commonwealth* v. *Kendall*, 12 Cush. 414.  *Commonwealth* v. *Clapp*, 5 Gray, 97.  *Commonwealth* v. *Williams*, 6 Gray, 1.  *Commonwealth* v. *Bennett*, 108 Mass. 27.  *Commonwealth* v. *Intoxicating Liquors*, 115 Mass. 153.  *Commonwealth* v. *Ducey*, 126 Mass. 269.  *Beer Co.* v. *Massachusetts*, 97 U. S. 25.  *License Cases*, 5 How. 504.  *Leisy* v. *Hardin*, 135 U. S. 100.  *Carstairs* v. *O'Donnell*, 154 Mass. 357.  *Mugler* v. *Kansas*, 123 U. S. 623, and cases therein cited.

And we do not see that St. 1897, c. 271, goes beyond the fair and reasonable exercise of that right.  The first section provides that " All spirituous or intoxicating liquors to be transported for delivery to or in a city or town where licenses of the first five classes have not been granted, when to be transported for hire or reward, shall be delivered by the seller or consignor to a railroad corporation or to a person or corporation regularly and lawfully conducting a general express business, in vessels or packages plainly and legibly marked on the outside with the name and address, by street and number, if there be such, of the seller or consignor, and of the purchaser or consignee, and with the kind and amount of liquor therein contained." It then provides that delivery of any part of such liquors " to any person other than the owner or consignee whose name is marked by the seller or consignor on said vessels or packages, or at any other place than thereon marked, shall be deemed to be a sale by any person making such delivery to such person in the place where such delivery is made." Section 2 provides that the carrier shall keep a certain detailed record of the reception and delivery of such liquors.  Section 3 provides that all packages containing intoxicating liquors addressed contrary to the provisions of this act, or to a fictitious or unknown person, or to a person who cannot be found, shall be declared forfeited to the Commonwealth.

The act was manifestly intended to meet some difficulties which had been encountered by the government in the prosecution of common carriers for illegal keeping of intoxicating liquors, and to make it more difficult for the guilty to escape detection when . setting up the fraudulent defence that the

liquors found in the possession of the carrier were for delivery by him as such to some person.

It is only one of the many statutes which indicate that the policy of the Commonwealth is to require that the traffic in liquors in this State shall be open, so that every step shall be exposed to the scrutiny of the authorities, and that the violation of the law may be the more easily detected. Examples of this policy are to be found in the third section of chapter 100 of the Public Statutes, requiring a druggist to keep a record of his sales, which record shall be at all times open to the inspection of certain public officers; in the ninth section, which provides that the license shall be displayed upon the premises in a conspicuous position; in the twelfth section, which provides that "No . . . licensee shall place or maintain, or permit to be placed or maintained, upon any premises used by him for the sale of spirituous or intoxicating liquor under the provisions of his license, any screen, blind, shutter, curtain, partition, or painted, ground, or stained glass window, or any other obstruction, or shall expose in any window upon said premises any bottle, cask, or other vessel containing, or purporting to contain, intoxicating liquor, in such a way as to interfere with a view of the business conducted upon the premises"; and in the fifteenth section, which provides that certain public officers may enter upon the licensed premises to see how the business is conducted, and may take samples of the liquor for examination and analysis.

Nor is there any ground for saying that the forfeiture is to be regarded as in the nature of an excessive or unusual punishment.

The first seven requests, therefore, were rightly refused.

The eighth request concerns more particularly the judicial proceedings for enforcing the forfeiture. The statute named no way of enforcing such forfeiture, and hence the only way was through the provisions of Pub. Sts. c. 194, the proceedings under which are carried on upon the civil side of the court. In this state of the law, St. 1897, c. 487, was passed, the second section of which is as follows: "The provisions of chapter one hundred of the Public Statutes, relating to the seizure and forfeiture of intoxicating liquors, shall apply to the provisions of

chapter two hundred and seventy-one of the acts of the year eighteen hundred and ninety-seven."

These provisions are to be found in Pub. Sts. c. 100, §§ 30–46, both inclusive.  They were framed with great care, and contain specific and complete directions for the seizure and forfeiture of liquor illegally kept for sale.  They are frequently invoked for that purpose, and we do not understand that their constitutionality as now existing is contested by the claimant.

The Legislature desired to have the process for perfecting the forfeitures under St. 1897, c. 271, carried on upon the criminal side of the court, and they had already upon the statute book a complete, long established, and constitutional system provided for similar cases, and so the second section of St. 1897, c. 487, was passed.

It is contended by the claimant, in his brief, that these provisions of Pub. Sts. c. 100, " do not fit the case, and are wholly inadequate to meet the constitutional requirements.  An honest effort to apply them wholly fails.  They are framed to provide for the destruction of liquors intended for sale contrary to law. This is the gist of the offence.  Such intent has to be sworn to before process will issue, and it must be alleged in both the complaint and the warrant."  Also that " they prescribe a course of proceeding which meets all the exacting constitutional requirements where keeping with intent to sell is the ground for the forfeiture.  But they are not at all adapted or suitable for chapter 271, where no intent to sell need be shown, and where the grounds for the forfeiture are very different."

An examination of these sections of Pub. Sts. c. 100, shows that (§ 30) to procure a search warrant the oath or affirmation must be that the deponents have reason to believe, and do believe, that liquor is kept in a certain place " and is intended for sale contrary to law," or has been brought into a town " in violation of the provisions of section seventeen " of Pub. Sts. c. 100, and the magistrate or court, " upon its appearing that there is probable cause to believe said complaint to be true, shall issue a warrant of search."

The other sections provide for the service of the warrant, notice to parties, and a hearing, and (§ 37) " If it appears that the liquor, or any part thereof, was at the time of making the

complaint owned or kept by the person alleged therein, for the purpose of being sold in violation of law, the trial justice or court shall render judgment that such and so much of the liquor so seized as was so unlawfully kept, and the vessels in which it is contained, shall be forfeited to the Commonwealth."

It appears that the whole foundation of the proceedings and the cause and ground of the forfeiture are that the liquors are kept " for the purpose of being sold in violation of law."

But the cause and ground of forfeiture declared in St. 1897, c. 271, is that the liquors are in the hands of a common carrier for transportation to a town where certain licenses have not been granted, and are intended for delivery contrary to law, and the proceedings to enforce such forfeiture, including the decree of the court declaring it, must be based upon that ground.

If, therefore, the second section of St. 1897, c. 487, is to be construed as meaning that in every respect these provisions of Pub. Sts. c. 100, are to be followed, whether applicable or not, we have an interpretation which is not only unconstitutional, but is nonsensical. As stated in the claimant's brief, " an honest effort " to apply the provisions " wholly fails."

It is to be presumed, however, in the absence of anything to the contrary, that the Legislature intended to say only that which it had the constitutional right to say, and no statute will be construed so as to render it unconstitutional if there be any constitutional interpretation reasonably possible.

As was stated by Shaw, C. J., in *Commonwealth* v. *Kimball,* 24 Pick. 366, 370, " It is unquestionably a well settled rule of construction, applicable as well to penal statutes as to others, that when the words are not precise and clear such construction will be adopted as shall appear most reasonable, and best suited to accomplish the objects of the statute; and where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the Legislature to avoid such conclusion." Proceeding under this rule of interpretation, we think that St. 1897, c. 487, § 2, may be taken to mean that with the proper modification of the oath and adjudication as suggested and required by the ground of forfeiture under St. 1897, c. 271, the general form of machinery set out in the provisions of Pub. Sts. c. 100, for

enforcing forfeitures, is applicable and is to be followed. This interpretation provides for the rights of all parties, is " best suited to accomplish the objects of the statute," namely, the judicial declaration of the forfeiture incurred under St. 1897, c. 271, appears most reasonable, violates no rule of construction, and is constitutional.

The court properly refused to give the eighth request.

*Exceptions overruled.*