No. 11,320.

THE STATE VS. A. P. DUPAQUIER.

:1. · The ordinance of the city of New Orleans requiring (under penalties in case of refusal) vendors of milk to the public to furnish gratuitously on application of sanitary inspectors samples of milk not exceeding one-half pint for inspec

.37*

State vs Dupaquier.

tion and analysis is not unconstitutional as forcing dairymen to furnish evidence against themselves, as taking private property for public use without compensation and without due process of law, as depriving them and their property of the equal protection of the law, and denying them protection in person and property from unreasonable searches and seizures and authorizing invasion of the same, without warrant founded on oath or affirmation.

2. The ordinance is not unreasonable, vexation and oppressive, but a legitimate exercise of the police power for the public health.

APPEAL from the Second Recorder's Court of the City of New Orleans. *De La Bretonne, J.*

*Frank McGloin* for Plaintiff and Appellee:

The Federal Constitution is primarily a check upon Federal power; it exercises no restraint upon the sovereign powers of the States, except in so far as this latter effect is clearly provided for, in the instrument itself. United States vs. Cruikshanks, 92 U. S. 550, 551, 552; Morgan vs. Louisiana Board of Health, 118 U. S. 467; State vs. Brennan, 50 N. W. Rep. 625; *Ex parte* McNeely, 36 W. Va. 881, 32 Am. St. Rep. 831.

The provisions of the Federal Constitution forbidding unreasonable searches and seizures, and prohibiting the taking of private property for public purposes, without compensation made, do not affect State legislation; same authorities.

The provisions of the Louisiana Constitution prohibiting the forcing of persons to testify against themselves, and forbidding searches and seizures for procurement of evidence against the owner or possessor in a criminal process, do not apply in prosecutions for violations of mere municipal police ordinances. Dillon, Mun. Corp., Sec. 432; 2 La. 442; 4 An. 337; 35 An. 1192; 42 An. 272; 42 An 1112; 43 An. 836; 45 A. 717.

The ordinance of the City of New Orleans requiring milk vendors to give to sanitary inspectors a sample of their milk, does not authorize the inspector to take, against the will of the vendor, such sample, and it therefore does not provide for a seizure, as contemplated by the Constitution, nor does it make the failure to furnish a sample a confession of guilt, and it is not compelling a man to testify against himself.

This ordinance, if in any way involving a matter of evidence, is intended to secure proofs of innocence, and not of guilt. 32 Am. St. Rep. 643.

If considered a seizure, it is not unreasonable, and only unreasonable seizures are forbidden. Comm. vs. Watts, 84 Ky. 537.

The City of New Orleans has full authority to prevent the sale within its limits of adulterated milk, or foods unfit for human consumption. State vs. Labatut, 39 An. 514; State vs. Callac, 45 An. 29; State vs. Fourcade, 13 S. R. 187. See also State vs. Schlemmer, 42 An. 1167, where a baker was fined *for failing to fill up a well*, upon his premises, *at his own cost*.

A proper system or method of inspection is necessary to the carrying out of this power, and is implied in the grant to prevent sale of adulterated food and drink. Parker and Worthington on Public Health and Safety, Sec. 311; Dillon on Municipal Corporations, Sec. 390 (323), Ed. 1890; Cooley, Cons. Lim. 596; State vs. Fosdick, 21 An. 256; Clark vs. Board, 30 An. 1353.

Inspection may be precedent to privilege of selling or subsequent. In former case, the legal penalty is ordinarily for selling uninspected or uncertified wares. In the latter, the vendor may sell, but is bound to submit to examination on demand of the officers of the law. Parker and Worthington on Public Health and Safety, Sec. 304; Comm. vs. Carter, 132 Mass. 12. It is impossible to safely use precedent inspection, in the case of milk, to be sold in varying quantities to a number and variety of purchasers.

Sellers of milk are not entitled to trade free from all public control. The city has the authority to license them, and when they accept such license, and sell free from precedent inspection, their relations with the public are in the nature of contractual, and they can not refuse to comply with reasonable ordinances regulating the calling they are pursuing. Guillotte vs. City, 12 An. 432; Comm. vs. Carter, 132 Mass. 15; Pitkin vs. Springfield, 112 Mass. 509; Bertholf vs. O'Reilly, 74 N. Y. 509, 117; State vs. Davis, 32 Am. Rep. 640.

Persons pursuing a calling in which the public health is involved deal in wares in which the public has an interest as well as themselves, and, to the extent necessary for the securing of the rights of the public in the premises, they can be compelled to submit to efficient inspection. State vs. Davis, 32 Am. St. Rep. 640.

The trifling loss to the vendors of milk, imposed by the ordinance attacked, is a cost of inspection proper, and as such imposed justly upon the owner of the property to be inspected. Turner vs. Maryland, 107 U. S. 38; Morgan vs. Board of Health, 118 U. S. 466; State vs. Fosdick, 21 An. 258; Clark vs. Board of Health, 30 An. 1353. See also C. C. & A. R. R. vs. Gibbes, 12 Sup. Ct. ·Rep. 257.

*Jas. C. Walker* Attorney for Defendant and Appellant:

The several sections of City Ordinance No. 6596, C. S., approved August 2, 1892, are connected and interdependent; they fix a standard below which milk shall be deemed adulterated; the chemical test by means of which this adulteration shall be determined, and require that every dairyman shall, under penalty of fine and imprisonment, furnish gratuitously, as often as the health officers demand it, half pint samples of milk, to be subjected to such analysis, as means of proof to convict themselves of selling, or offering for sale, milk inferior in quality to the established standard.

A fine or sentence is· unconstitutional when imposed by a city ordinance which prescribes means of proof forbidden by the Constitution.

The ordinance conflicts with Louisiana Constitution, Articles 2 and 6; United States Constitution, Amendments IV, V, and XIV, and with Acts Louisiana, 1880, No. 20, p. 23, and 1882, No. 82, p. 103, and is unconstitutional for the following reasons:

The ordinance deprives dairymen of their milk without compensation, at the discretion of municipal officers, and without uniform rule or regulation.

It compels dairymen to be witnesses against themselves and to furnish samples of milk to be used as evidence against themselves, under penalty of fine and imprisonment.

It denies to dairymen the equal protection of the laws.

It denies them protection in the enjoyment of their property.

The ordinance denies them protection in person and property against unreasonable searches and seizures, and authorizes the invasion of the same without warrant founded on oath or affirmation.

It subjects them to an odious, oppressive and unreasonable exaction which interferes with their vocation, which is lawful and industrial, and not injurious to the community.

The ordinance deprives dairymen of their property and liberty without due process of law.

The ordinance establishes a, rule of evidence and mode of proof legislative in character, and makes the same conclusive evidence against parties accused thereunder.

---

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant having been sentenced to pay a fine of twenty-five dollars, and in default of twenty-five dollars to suffer imprisonment for thirty days, on the charge of refusing, in violation of Ordinance No. 6576, of the city of New Orleans, approved August 2, 1892, to furnish the officers of the Board of Health with samples of the milk he was supplying to his customers, has appealed.

The constitutionality of the ordinance was attacked on several grounds by special plea in the magistrate's court, and a bill of exceptions reserved to the overruling of the same.

The ordinance violated is as follows:

"SECTION 1. Be it ordained by the Common Council of the City of New Orleans, that the standard by which the adulteration of milk shall be considered to be such milk as shall be determined under Ordinance No. 6022, as adopted June, 1879, shall be as follows: Normal or pure milk shall be considered to be such milk as will, upon the test thereof, be found to possess a minimum specific gravity, actual density, of one thousand and twenty-nine (1.029) at sixty (60° F.) degrees Fahrenheit, and shall contain not less than thirteen (13) parts of total solids in one hundred parts of milk, as follows: Butter fat, three and one-half (3½) per centum; solids not fat, nine and one-half (9½) per centum; and water, not more than eighty-seven (87) per centum.

"SEC. 2. Be it ordained, etc., that any milk falling below the test above described, or any milk from which the cream has been removed, or to which water, foreign fats, coloring matter, or any other foreign or extraneous substance has been added, shall be considered as adulterated under said ordinance.

"SEC. 3. Be it ordained, etc., that every vendor, or establishment, or person, who sell milk shall be obliged to furnish to any sanitary officer or inspector of the Board of Health of the State for inspection and analysis, on application therefor, a sample of the milk

sold by said vendor, or establishment, or person, from the can or other vessel from which it is sold to the public; said sample shall not exceed one-half pint, and there shall be no charge therefor.

" Sec. 4. Be it ordained, etc., that any person who shall be found guilty of selling milk below the standard hereinbefore fixed or otherwise adulterated or modified as provided under section two of this ordinance, or refusing to furnish samples as hereinbefore provided, shall be subject to a fine of not more than twenty-five dollars for each and every offence, and in default of payment thereof, to imprisonment in the parish prison for a period of not over thirty days; said fine or imprisonment to be enforced by any court of competent jurisdiction within the corporate limits of the city of New Orleans."

Appellant contends:

1. That the ordinance deprives dairymen of their milk without compensation and without uniform rule or regulation.

2. It compels dairymen to be witnesses against themselves and to furnish samples of milk to be used as evidence against themselves under penalty of fine or imprisonment.

3. It denies them the equal protection of the law.

4. It denies them protection in the enjoyment of their property.

5. It denies them protection in person and property against unreasonable searches and seizures, and authorizes the invasion of the same without warrant founded on oath or affirmation.

6. It subjects them to an odious, oppressive and unreasonable exaction which interferes with their vocation, which is lawful and industrial and not injurious to the community.

7. It deprives dairymen of their property without due process of law.

8. It establishes a rule of evidence and mode of proof legislative in its character and makes the same conclusive evidence against parties accused thereunder.

His counsel additionally maintains that the ordinance is not within the scope of the police power of the city; that considered as a health law it bears no substantial relation thereto; that it delegates arbitrary power to health officers without restraint or uniform rule or regulation.

We think that the objection raised to the ordinance in question as establishing a rule of evidence is not an issue in this case. Defendant was not on trial for having sold adulterated milk, and there-

fore no question arose in the lower court upon the admissibility or effect of evidence against him based upon an analysis made from a sample of milk taken from him under protest or by compulsion under the provisions of the ordinance.

We find in Tiedman's "Limitations of the Police Power" a note on page 292, to the effect that the Legislature has the power, in an act forbidding the sale of impure or adulterated milk, to fix a standard by which it shall be judged, and as supporting this proposition the following citation of authorities: People vs. Cipperly, Ct. Ap., N. Y., February 5, 1886; State vs. Smythe, 14 R. I. 100 (51 Am. Rep., p. 344); Commonwealth vs. Waite, 9 Allen, 264; Commonwealth vs. Farren, 9 Allen, 489; Polenskie vs. People, 73 N. Y. 65.

In State vs. Fourcade (45 An., p. 717) we held that under the powers delegated to the city of New Orleans on the subject of the regulation of the milk traffic the City Council had the legal right to adopt a standard.

Referring to the adoption of a standard, Parker and Worthington, in their work on Public Health and Safety, say, in Sec. 301: "In some of the States the statutes on this subject provide that in all prosecutions under the act, if it be shown upon analysis that the milk sold or offered for sale contained more than a certain percentage of watery fluids, it shall be deemed, for the purposes of the act, to be adulterated. These provisions are valid, as they merely regulate and control the quality of an article of food in the interest of the public health, and fix a standard of quality. The clause does not establish a rule of evidence to the prejudice of the accused, but creates and defines a new offence. It is the purpose of the statutes to prohibit, not merely the dealing in milk which has been adulterated, but also the dealing in milk of such inferior quality as to fall below the standard required," citing numerous authorities.

We will postpone a discussion of the correctness of these statements until a case comes before us in which the rights of the appellant are claimed to have been illegally affected through the ordinance as " a rule of evidence."

Most of the questions raised in this litigation were directly passed upon in the case of Commonwealth vs. Carter, 132 Mass. 12, from which we shall quote freely later on, and the whole subject of the regulation of the milk traffic is discussed in Parker and Worthington's Public Health and Safety, on pages 345 to 349, under the sections from

299 to 304. The last section (Sec. 304) is as follows: "It is said milk dealers may be required to supply from time to time samples of milk to milk inspectors for analysis, and the inspectors may be authorized to take samples for that purpose and to condemn and pour upon the ground, or return to the person who supplied to the dealer, any milk which upon inspection he finds to be adulterated, or below the prescribed standard. Shivers vs. Newton, 45 N. J. L. 469; Blazier vs. Miller, 10 Hun. 435."

The question of the general powers of the city of New Orleans over the subject of the regulation of the sale of milk within its limits has been several times presented to and passed upon by this court.

The present suit does not involve an issue upon the general power, but upon the special application of the power as attempted to be made through the ordinance whose constitutionality, upon the specific grounds urged, is herein attacked.

We do not think the attack upon the ordinance, on the ground that it forces a man to furnish evidence against himself, is well taken.

On this point plaintiff's counsel in his brief contends as follows: "The object of the ordinance was not to secure evidence against violation of the law, but simply to secure means for proper examination of the milk which is being sold upon the public streets and places to inhabitants of New Orleans. The milk can not possibly be produced before the courts, being necessarily destroyed by the very chemical process for which the ordinance provides. No law can prevent the chemist of the Board of Health from chemically analyzing the milk which vendors are selling and from testifying to the result of the analysis. Whether the sample analyzed was acquired by purchase or seizure would render the effect of the chemist's testimony neither more favorable or unfavorable to the one accused. The object of the ordinance is rather, if it can be considered, as contemplating the furnishing of evidence, the obtainance of satisfactory evidence of the vendor's innocence than of his guilt. State vs. Davis, 108 Mo. 666 (18 S. W. Rep. 894). In this instance the municipal authorities have licensed the vendors to sell and waived inspection previous to the taking out of the wares, and as a precaution to the end of ascertaining that the privilege given is not being abused requires the vendors when occasionally called upon to furnish a trifling sample from their stock. This is emphatically to gather assurance of their good faith and right to continue in the

calling they are pursuing, and not for the purpose of extorting evidence against wrong-doers. It was not presumed the vendors were intending to violate the law; it is not to be presumed that the present appellant has declined to give a sample in this case, because of the fear that his milk would be found to be adulterated had the samples been furnished. If the original seizure or taking had been justifiable, the fact that it is possible that the thing may serve to subsequently fasten criminal guilt upon the possessor can not render the taking unlawful. Langdon vs. People, 133 Ill. 381. Indeed, the courts have held that even though the original taking were a trespass, the results of the taking were admissible in evidence. Gindrat vs. People, 27 N. E. 1085.''

"That the city having a right to license the selling of milk and the parties having availed themselves of that privilege, under the conditions stated the wares they sell become property in which the public has an interest. It is that public interest alone in the foods generally sold which justifies the public examination of private property. If the public have such interest in the wares of this character to be disposed of to them, that same public have a corresponding right of access to such wares to the extent necessary for the preservation of their rights or interests. The milk sold by the milkmen in the city of New Orleans, therefore, is public property as well as private to the extent that the public have the right to effectively provide for its purity and to that end to view and analyze it.''

In Commonwealth vs. Carter, 132 Mass. 12, the Supreme Court held that a statute of that State authorizing inspectors of milk to enter all carriages used in the conveyance of milk, and whenever they have reason to believe any milk found therein is adulterated to take specimens thereof for the purpose of analyzing or otherwise satisfactorily testing the same, was constitutional.

Taking up the particular objection we are now considering, it said: "Neither is the power granted in violation of the provisions of Art. 12 of the Declaration of Rights, that no man shall be compelled to give evidence against himself. If the seizure is such as is authorized by the Constitution, and a law passed in pursuance thereof, the fact that the thing seized may be used in evidence against the person from whose possession it is taken does not render the seizure itself a violation of the Declaration of Rights." 2 Met. 329, 337.

In State vs. Davis, reported in 18 S. W. Rep. 894, the Supreme Court of Missouri held that statutes of that State prohibiting a druggist from selling liquor except on the prescription of a physician, and declaring that such prescriptions shall be carefully preserved and produced in court or before any grand jury whenever required, and that on the failure of the druggist to produce the same he shall be deemed guilty of a misdemeanor, were not in conflict with the article of the Constitution providing that no person shall be required to furnish evidence in a criminal case against himself.

Referring to the claim that they were, the court said: " We think not. The right to sell intoxicating liquor is not a right or privilege accorded to every citizen. The State has the right to control, regulate or altogether prohibit its sale. It has, therefore, the undoubted right to impose such conditions upon those whom it may authorize to sell such liquors as it may deem necessary to properly regulate and control its use (Austin vs. State, 10 Mo. 591). Druggists are not given an unlimited right to sell intoxicating liquors. * * * There can be no doubt that the Legislature had the right to impose its own conditions in authorizing such sales. It undertook to do so by the provisions of Section 4621, which limits sales to those made under the written prescription of a regularly registered and practising physician."

" To prevent abuse of their authority to sell as a covering under which to make unlawful sales, Sec. 4622 requires the druggist to preserve all such prescriptions and produce them in court or before the grand jury when lawfully required. This duty was imposed as a condition upon which a sale was authorized. The prescriptions thus become the license or justification to the druggist for making sales which would otherwise be unlawful. As evidence of authority to make particular sales they would constitute private papers of the druggist, but could not be regarded as evidences of crime but rather of innocence. The chief purpose of their preservation, however, was evidently that they might be used in giving aid to courts and grand juries in their proper and lawful endeavors to control and regulate the sale of intoxicating liquors within the limits prescribed by the Legislature, and in the investigation of matters of public concern. In these respects all the prescriptions become public and not private papers, and the druggist merely their custodian. It could not be insisted that the production of the official books of a collector, treas-

State vs. Dupaquier.

arer or other public officer could not be required in the investigation of his accounts or used in evidence against him in a prosecution for official misconduct. The obvious reason is that the books are not the private property of the citizen, but the public records required to be kept by the officer. The law imposing the duty upon druggists of preserving the prescriptions of physicians left with them, and of producing them before the grand jury, is as clearly required as the duty imposed by law upon any public officer to keep an account of the public money which passes through his hands. Our conclusion is that Sec. 4622 is constitutional, and all its requirements may be lawfully enforced."

This decision was referred to in State vs. Davis, 23 S. W. Rep., 759, and the principle enunciated therein was reaffirmed.

We do not think that the objections urged by appellant to the ordinance, that it deprives him of the equal protection of the law; that it denies him protection in the enjoyment of his property; that it denies him protection in person and property against unreasonable searches and seizures, and authorizes the invasion of the same without warrant, founded on oath or affirmation, and that it deprives him of property and liberty without due process of law, are well founded.

Defendant has selected as a business one which, improperly conducted in the hands of unscruplous men, would seriously affect the health of the public.

It is no longer a debatable question whether callings of that character can be legally brought under reasonable restraints and regulations through the exercise of the police power. The object of the ordinance in question is to protect the general public against dishonest vendors of milk; its effect will be not only not to injure appellant, but to protect him as a member of the public from that class of persons, and incidentally to save him as an honest vendor in that business from injurious competition through fraudulent devices and ill practices. Honest vendors could certainly see nothing to flow from the ordinance but proper and beneficial results—they certainly should raise no complaint at having their own actions brought to a test when in so doing they purge the business of disreputable characters.

We do not think the ordinance was beyond the scope of the police power of the city, nor that considered as a health ordinance it bears no substantial relation thereto.

We are of the opinion that in delegating to the Common Council the powers it did, the Legislature contemplated that it would adopt a reasonable system to render the power effective. We agree with plaintiff's counsel that a reasonable method of inspection of the milk offered for sale to the public falls legitimately under the grant of power. There are two methods of inspection. The first is to compel the vendor to exhibit the articles he proposes to dispose of to a public officer, as a condition precedent to their sale, but inasmuch as there are certain cases where the prior inspection would fail of accomplishing the purpose, by reason of the facility offered for subsequently tampering with the goods inspected, a second system is often had recourse to. Under this system the vendor is permitted to proceed with his sales without prior inspection, but with the obligation to submit his commodity to inspectors when the latter think it necessary to demand an examination. The penalty is laid upon the sale, not of uninspected wares, but of improper ones. We are of the opinion that the liability at any moment to a call for inspection, together with the dread of the penalty following detection, operates strongly by way of prevention against the perpetration of frauds, and, as counsel well says, "are the most effective of checks against the sale of adulterated food, and the object of the law otherwise unattainable is accomplished."

We have already referred to the case of Commonwealth vs. Carter, 132 Mass. 12., as presenting issues almost identical with those presented here in respect to statute closely resembling the ordinance we are now considering. In that case the court said: "It is said that the provision is unconstitutional, because it authorizes the taking of property without consent or compensation, warrants unreasonable searches and seizures, compels one to furnish evidence against himself and ts not within the police power of the commonwealth. An analysis of a specimen of milk offered for sale is an appropriate means of carrying into effect the various provisions of the statutes regulating the sale of milk in this commonwealth. In the case at bar the can of milk was taken from a carriage used in the conveyance of milk, and it is unnecessary to consider whether the words of the section, ' place where milk is stored or kept for sale,' may or may not include a dwelling house, and whether if construed to include a dwelling house they do not purport to give a power which the Legislature could not give, because the clause authorizing an

entry is separable from that which authorizes an entry into all carriages used in the conveyance of milk.

"If the statute had required that all milk offered for sale should first be inspected it would be hardly contended that the trifling injury to property occasioned by taking samples for inspection would be such a taking of private property for public use as to require that compensation be made therefor. Such an injury to property is a necessary incident to the enforcement of reasonable regulations affecting trade in food. Private property is held subject to the exercise of such public rights, for the common benefit, and in the case of licensed dealers in merchandise the injury suffered by inspection is accompanied by advantages which must be regarded as a sufficient compensation. Bancroft vs. Cambridge, 126 Mass. 438, 441. Instead of requiring all milk offered for sale to be first inspected, the Legislature, for obvious reasons, has permitted licensed dealers to sell milk without inspection, has imposed penalties for selling adulterated milk, and has provided that when the inspector of milk has reason to believe that any milk may be adulterated he may take specimens thereof in order that by analysis he may determine whether the milk has been adulterated. Such a seizure of milk, for the purpose of examination, is a reasonable method of inspection, and does not require a warrant. It is a supervision, under the laws of the State, by a public officer of a trade which concerns the public health, and it is within the police power of the commonwealth. Commonwealth vs. Ducey, 126 Mass. 269; Jones vs. Root, 6 Gray, 435.

"There is nothing in this case which requires us to determine the rights of the defendant if the inspector had attempted to take a larger quantity of milk for analysis than was reasonably necessary for the performance of his duties. We have not found it necessary to consider whether the defendant by voluntarily accepting a license to sell milk has not assented to the conditions and regulations which the Legislature has seen fit to impose upon the exercise of the trade licensed. See Pitkin vs. Springfield, 112 Mass. 509; Bertholf vs. O'Reily, 74 N. Y. 509, 517."

Appellant complains that the ordinance is vexatious and oppressive, in that the inspectors are subjected to no special and uniform rules to control and govern their action. He claims that it opens the door to favoritism and to the gratification of personal spite and

prejudice; that the inspectors may harass the vendors of milk by unnecessary and repeated demands for samples. The mere fact that powers under an ordinance may be abused does not make the ordinance itself illegal, unreasonable or oppressive; it is very difficult to so hedge in power conferred as to withdraw from it opportunities for wrong-doing. If such wrong-doing as appellant anticipates were to occur, we think that there are ample remedies at hand to correct and punish it. In the case at bar the efficacy of the inspection rests to a great extent upon the very uncertainty as to the times and places of inspection of which counsel complains. It would be an easy matter to prepare for inspections when parties knew in advance precisely when and where they were to be made.

For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and it is now affirmed.

Rehearing refused.