# CITY OF ST. LOUIS, Plaintiff in Error, v. GRAFEMAN DAIRY COMPANY.

### (No. 2.)

### In Banc, October 20, 1905.

1. **MILK: Standard of Purity: Prohibiting Sale: Police Regulation.** Under its charter the city of St. Louis has the right to fix a standard of purity for milk sold or offered for sale within its corporate limits, and to prohibit the sale of milk which does not conform to that standard, even though it be natural milk from healthy cows.

2. **——: ——: ——: ——: Butter Fat: Purpose of Ordinance.** The purpose of the ordinance in this case, which imposes a fine of twenty-five dollars on a vendor of milk who sells milk "which shows on analysis less than three per cent of butter fat, the said butter fat being estimated gravimetrically by the Adams Paper Coil process," is to prohibit, not merely the dealing in milk which has been adulterated, but also the sale of milk of such inferior quality that it falls below the prescribed standard of purity. And the standard of purity fixed by the ordinance is not so unreasonably high as to justify any court in holding it void on that ground.

3. **——: ——: Conceded Purity: Power of Court.** The court is not justified in taking judicial notice that milk which has less than three per cent butter fat is universally conceded to be wholesome and innocuous, and for that reason holding an ordinance which fixes that as the standard of purity to be void.

4. ———: ———: **Scientific Test: Judicial Notice of Process.** The municipal assembly has a right to fix a scientific standard or test for determining the percentage by weight of butter fat in milk, and the court will not take judicial cognizance that the ordinance in requiring the employment of the "Adams Paper Coil process" for determining gravimetrically the percentage of butter fat present, did not adopt a proper test or gravimeter. The city thereby fixed upon a definite standard, binding alike upon it and the vendors of milk, and does not leave the weight to be determined by the opinion of witnesses.

5. ———: ———: ———: **Changing Rule of Evidence.** Such a test does not change the rule of evidence. On the contrary, the ordinance by providing that "on demand, he shall then and there have the right to a duplicate of said sample sealed with the seal of the officer," looks to his protection by giving him the right to have a test made by a disinterested chemist, and this analysis he can use at his trial to contradict the city chemist; and since the ordinance nowhere makes the analysis by the city chemist conclusive upon him, he has his day in court and the privilege of having the quality of the milk ascertained according to settled principles of legal evidence.

Error to St. Louis Court of Criminal Correction.—*Hon. Hiram N. Moore*, Judge.

REVERSED AND REMANDED.

*Chas. W. Bates* and *Wm. F. Woerner* for plaintiff in error.

Section 18 of Ordinance 20808, prohibiting the sale of milk which on analysis shows less than three per cent by weight of butter fat, estimated gravimetrically by the Adams Paper Coil process, is plainly for the purpose of protecting the health of the public, and guarding against disease, and against fraud and deception, by prohibiting the sale, or carrying with the intention of selling, an unwholesome quality of a universally-consumed article of food. Provisions of that class are strictly within the reasonable exercise of the ordinary police power lawfully delegated to the city of St. Louis by the Legislature in the charter, and which the

various constitutional provisions invoked by defendant were never intended to curtail or affect. St. Louis v. Galt, 179 Mo. 18; St. Louis v. Fischer, 167 Mo. 664, 194 U. S. 362; Ferrenbach v. Turner, 86 Mo. 420; State v. Dupaquier, 46 La. Ann. 583; Parker & Worth on Pub. Health and Safety (1892), secs, 299, 304, pp. 343, 348; St. Louis v. Weber, 44 Mo. 550; State v. Layton, 160 Mo. 474; Lawton v. Steele, 152 U. S. 136; Gundling v. Chicago, 177 U. S. 188.

*E. F. Stone* for defendant in error.

(1) If the standard arbitrarily fixed by the ordinance operates to suppress or prohibit the sale of milk that is in fact harmless and wholesome and is known to be so as a matter of common knowledge, it becomes the solemn duty of the court to so adjudge, and thereby give effect to the Constitution. The ordinance fixes the standard at "not less than three per cent butter-fat." There is no conflict of testimony or contradictory evidence as to the effect on public health of milk containing less than three per cent butter-fat, as there was in the Layton case, as to the use of alum. On the contrary, it is a matter of common knowledge and generally conceded that milk with less than three per cent butterfat is wholesome and innocuous, healthy and valuable; and it is a matter of common knowledge that milk below three per cent fat is universally used, not only as a wholesome and nutritious food, but also in the preparation of many other kinds of food of daily consumption by the human family. No cook or head of a family would attempt to successfully operate the culinary department of a home or establishment of any kind without just such milk as is here prohibited by said standard. There is no room for doubt here. All room for doubt is removed by common knowledge and universal information. No fraud or deception, no unwholesome-

ness, nor danger to public health even hinted at, let alone alleged or proven. State v. Layton, 160 Mo. 498; Meagher v. Kansas, 123 U. S. 661; Watertown v. Mayor, 109 Mass. 319; In matter of Jacobs, 98 N. Y. 98. An ordinance must not arbitrarily go further than is necessary and appropriate, and must not require things to be done, burdens to be carried, property consumed or rights sacrificed when unnecessary for the protection of health. People v. Gillson, 109 N. Y. 389; Slaughter House Cases, 16 Wall. 106; State v. Julow, 129 Mo. 163; State v. Fisher, 59 Mo. 174. The ordinance must not be partial, oppressive or unreasonable, or it will be declared invalid and unconstitutional by the courts. Cooley, Const. Lim., 280; Beach on Pub. Corp., sec. 512; Freund on Po. Pow., sec. 142; Corrigan v. Gage, 68 Mo. 545; Ritchie v. People, 155 Ill. 98; Matter of Frazee, 63 Mich. 397; Kirkham v. Russell, 76 Va. 962; Gates v. Milwaukee, 10 Wall. 497. (2) An ordinance which commits to the will of a single official the practically absolute power of controlling the use of some well-known means of commercial or social activity, not a nuisance, is prima facie unreasonable and oppressive, beyond the domain of law, and will be pronounced unconstitutional and void. Tiedeman on Mun. Corp., sec. 151; Mayor v. Radecke, 49 Md. 218; Matter of Frazee, 63 Mich. 396; St. Louis v. Karr, 85 Mo. App. 617. (3) The city has power under its charter "by ordinance not inconsistent with the Constitution or any law of this State or of this charter," . . . . "to make provision for the inspection of milk." Nowhere is it authorized to prohibit directly or indirectly the sale of milk. Nor is it expressly empowered to regulate the sale of milk, and if such power exists at all it is but an implied or incidental one. State v. Mott, 61 Md. 309; Baltimore v. Radecke, 49 Md. 217; People v. Biesecker, 169 N. Y. 53.

GANTT, J.—This record is before us on writ of error to test the validity of section 18 of Ordinance No. 20808.

The statement filed in the First District Police Court charged a violation of said section by the defendant company in that it did, on April 28, 1903, carry and expose for sale at Leonard and Washington avenues, milk, which said milk did show on analysis less than three per cent by weight of butter fat, the said butter fat being estimated gravimetrically by the Adams Paper Coil process, contrary to the ordinance in such case made and provided. On a trial in the police court, defendant was found guilty and fined twenty-five dollars. It appealed to the St. Louis Court of Criminal Correction and in that court filed its motion to quash in the nature of a demurrer to the complaint on twelve different grounds. The said court sustained said motion and dismissed the cause, and thereupon the city sued out its writ of error in due time and form.

Without repeating the various grounds of the motion to quash or demurrer, it will suffice to say that in substance they assailed the said section of the ordinance along the same lines that were followed in St. Louis v. Liessing, which was argued and submitted along with this case at the same time. We have already expressed our views on the objections to this section of the ordinance in St. Louis v. Liessing. The particular provision involved in this appeal is the charge in the information that the defendant company sold milk showing "on analysis less than three per cent by weight of butter fat, the said butter fat being estimated gravimetrically by the Adams Paper Coil process." In this series of cases we have already determined, in harmony with the great weight of authority in this country, that under its charter the city of St. Louis has the right to fix a standard of purity for milk and cream sold and offered for sale within its municipal limits and to pro-

hibit the sale of milk which does not conform to that standard even though it be natural milk from healthy cows, that the purpose of the ordinance is to prohibit not merely the dealing in milk which has been in fact adulterated, but also in the sale and offering for sale of milk of such inferior quality that it falls below the prescribed standard of purity. We also hold that, in view of scientific knowledge and the numerous legislative enactments and ordinances in other States, the standards of milk and cream fixed by this ordinance are not so unreasonably high as to justify this or any other court in holding it void on that ground, and this court is not justified in holding that milk below the said standard is so universally conceded to be wholesome and innocuous that the ordinance is void on that account.

The one question remaining is, does the fact that the ordinance on a contest requires milk on analysis shall show not less than three per cent by weight of butter-fat, "*estimated* gravimetrically by the Adams Paper Coil process," render the ordinance void? Having reached the conclusion that it was within the power of the Municipal Assembly to fix the standard of purity, this court cannot say as a matter of law that it was unreasonable for the Assembly to provide that the weight of the butter-fat should be estimated, calculated or ascertained gravimetrically, or measured by weight. Nor that the adoption of the "Adams Paper Coil process" was not a proper gravimeter. The Assembly unquestionably had the right, in dealing, as it was, with a scientific question, to fix a scientific standard, and in the absence of all showing to the contrary this court cannot take judicial cognizance that the Adams Paper Coil process was not a proper test. By so fixing it a definite standard, controlling alike upon the city and one charged with a violation of the ordinance, was established, and the weight of the milk can be ascertained

scientifically and not left to the uncertain opinion of witnesses, whether experts or laymen, and the judgment of inspectors. On the contrary, if no fixed standard or test was established by ordinance, the vendor of the milk might well complain that his rights had been left to the unregulated judgment of the inspectors, or if no one gravimeter had been specified, then he might well complain that different tests might lead to different results and to varying standards of purity. This ordinance looks to his protection by providing that when an inspector takes a sample of milk or cream for analysis "the person, firm or corporation from whom the sample is taken shall, on demand therefor, *then and there,* have a right to a duplicate of said sample sealed with the seal of the officer on tendering him a suitable receptacle therefor." In this manner he can have his milk of the same quality tested by any disinterested chemist by the same method and is not conclusively bound by the analysis of the city chemist.

The argument of inconvenience urged by defendant we do not regard as of great weight. The ordinance does not attempt to change the rules of evidence, but is scrupulous to preserve to the vendor evidence under the official seal of the inspector which he may submit to an unbiased disinterested chemist to be tested by identically the same standard as that which the city proposes to use to determine whether he has or has not violated the ordinance. He has his day in court and by his counsel can subject the city chemist to the most rigid examination as to his method of testing the milk, and then, if adverse, meet it with the testimony of his own expert. The ordinance nowhere makes the test of the city chemist conclusive upon defendant. It simply fixes a standard and leaves the question of whether or not his milk is up to that standard according to the

prescribed test for all alike, to be ascertained by settled principles of legal evidence.

We think there is nothing to differentiate this case in principle from the others in which we have sustained the constitutionality of the ordinance. The St. Louis Court of Criminal Correction erred in dismissing the petition, and its judgment is reversed and the cause remanded to be tried in accordance with the views herein announced.

*Brace, C. J., Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.