## C. O. Anderson v. City of Tampa.

164 So. 546.
Division B.
Opinion Filed May 29, 1935.
On Rehearing December 17, 1935.

*Whitaker Brothers,* for Appellants;

*A. B. McMullen* and *Ralph A. Marsicano,* for Appellee.

Buford, J.—This appeal brings for review final decree of the Circuit Court of Hillsborough County in denying injunction and dismissing bill of complaint.

The bill of complaint sought to enjoin the City of Tampa from enforcing an ordinance which required that all bottled chocolate milk offered for sale and sold in the City of Tampa should be manufactured from Grade A whole milk, raw or pasteurized, and that Grade A whole milk, raw or pasteurized, shall contain 3½% butter fat. The ordinance made it unlawful to sell or dispose of bottled chocolate milk unless the product is made from milk containing at least 3½% butter fat.

There is no contention that the City of Tampa is not authorized to regulate by ordinance the sale of food products, including milk, within the corporate limits of that municipality.

The appellant contends that the proper standard is fixed by Chapter 14762, Acts of 1931, which deals with this subject. Section 1 of that Act, amongst other things, provides:

"Milk is hereby defined to be whole, fresh, clean lacteal secretion obtained by the complete milking of one or more healthy cows, properly fed and kept, excluding that obtained within fifteen days before and five days after calving, or such longer period as may be necessary to render such milk practically colstrom-free; and shall contain not less than eight and fifty one-hundredths per cent. (8.50%) solids not fat, and three and one-quarter per cent. (3.25%) butter fat."

Further, that Act provides:

"Chocolate Milk is hereby defined to be whole or skimmed milk to which has been added in a sanitary manner a chocolate or cocoa syrup composed of wholesome ingredients and shall contain not less than two per cent. (2%) butter fat."

Section 26 of the Act provides:

"Whenever any municipality shall have established any standard of qualification for sale of dairy products within its jurisdiction which is in excess of the requirements of this Act defining dairy products, nothing in this Act shall be construed as superseding or rendering ineffective or invalid any local regulation of any such municipality prescribing standards of dairy products and requirements under which same shall be produced in order to be sold within the jurisdiction of the particular municipality, but compliance with the standard fixed by this Act shall be sufficient as to all inspections made by or under the supervision of the State authorities outside of such particular municipality."

So it appears that in the very Act in which the Legislature fixed the standards of content of butter fat for certain dairy products it recognized in terms the right of municipalities to fix other standards. In State, *ex rel.* McAuley v. York, 90 Fla. 625, 106 Sou. 418, we held:

"When the municipal power to regulate is shown to exist, a regulatory ordinance valid on its' face and pursuant to the power, will be presumed to be applicable to, and justified by, local conditions, unless the contrary is made clearly to appear.

"When an ordinance is within the grant of power to the municipality, the presumption is that it is reasonable, unless its unreasonable character appears on its face, and the person attacking it as unreasonable or unjustly discriminatory must assume the burden of affirmatively showing that as applied to him it is unreasonable, or unfair and oppressive."

Much might be written concerning the power of municipalities to enforce such ordinances as the one here under consideration but we can see no good purpose to be served by doing so because the legal principles have been established by the highest courts in the land and have been enunciated through well reasoned opinions by learned judges. See Hebe Co. v. Norman E. Shaw, Secretary of Agriculture of Ohio, *et al.,* 248 U. S. 297, 39 Sup. Ct. Rep. 125, 63 Law Ed. 255; and Hutchinson Ice Cream Co. v. State of Iowa, 242 U. S. 153, 37 Sup. Ct. Rep. 28, 61 Law Ed. 217.

It is not contended that chocolate milk manufactured from milk having not less than 2% butter fat is not a wholesome article having food value and good for human consumption, but the contention is that the public when purchasing chocolate milk for consumption is entitled to know the contents and it is also contended that chocolate milk containing as

little as 2% butter fat is not a balanced ration and is not a proper food for children. It is also contended that milk containing not more than 2% butter fat is milk which has been partly skimmed, the cream being taken off, and which is what is generally known as skimmed milk.

No question is presented in this record contesting the propriety of the declaration in the ordinance to the effect that Grade A or whole milk must contain not less than 3½% butter fat. So far as the record discloses that standard is reasonable and well founded, but the appellant contends that to require him to manufacture chocolate milk of Grade A or whole milk is unreasonable and arbitrary because a good, wholesome chocolate milk can be made of milk containing only 2% butter fat; that it will sell as readily as that made from milk containing 3½% butter fat and is not injurious, that by setting the standard of 3½% butter fat content the ordinance requires the dairymen to use a milk of such expensive quality that he cannot meet the competition of imitation milk drinks or beverages which are not labeled as milk or milk products on the market and thereby deprives him of the sale of large quantities of partly skimmed milk which he could sell profitably in competition with those other drinks or beverages, if he were allowed to utilize his partly skimmed milk in the making of chocolate milk.

The learned chancellor, in determining this question said:

"I think the decree will have to be for the defendant. The ordinance merely requires that which is sold as milk to be so in fact and to be accordingly labeled. The addition of the foreign matter does not change its character as milk although the mixture be called chocolate milk, nor can it make any difference whether the mixture be considered a beverage or a food. Assuming the right of the city to

do so it seems that anything used as milk or milk products and sold as such by any name, whether correctly labeled or not, may be prohibited if it were necessary to go that far in this case. See Hebe Company v. Shaw, 63 Law Ed. 255.

"I am, therefore, of the opinion that the city clearly had the right, as it did in the ordinance, to require anything labeled, and sold as milk or chocolate milk to meet the standard of not less than $3\frac{1}{2}\%$ butter fat content, the equivalent of whole milk of Grade A quality. The ordinance is not unreasonable or arbitrary."

The evidence as disclosed by the record, we think, shows conclusively that for all practical purposes chocolate milk of Grade A or whole milk containing not less than $3\frac{1}{2}\%$ butter fat is a more wholesome product and has greater food value than chocolate milk made of a milk containing only $2\%$ butter fat; that the ordinance is not unreasonable in requiring those who place this product on the market to furnish the article of that high standard which the consumer is entitled to have.

On the whole, the record supports the finding of the chancellor and the decree should be affirmed.

It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, J., concur in the opinion and judgment.

DAVIS, J., dissents.

DAVIS, J. (dissenting).—The ordinance here under attack is not sustainable as a labelling ordinance because its object is to prohibit altogether the sale or disposition of bottled (but not unbottled) chocolate milk unless it is made from milk containing at least $3\frac{1}{2}\%$ butter fat. The state

statute recognizes that chocolate milk manufactured with a butter fat content of as low as 2% is not inimical to health nor productive of fraud against the public.

While the fact has almost been lost sight of by the law-making bodies of the nation, high and low, state and municipal, there is a well defined limit beyond which the police power cannot be exercised to accomplish spoliation of private business under guise of promoting either public health or affording protection from fraud.

The City of Tampa has undoubted police power to require chocolate milk to be so *labelled* or even packaged that a prospective purchaser of bottled goods offered for sale and sold under the designation of "chocolate milk" to the public shall be so informed of the contents as to enable the would be purchaser to see at a glance whether he is buying 3½% butter fat chocolate milk or 2% butter fat chocolate milk. But the right to protect the health of the public does not give rise to a power to *prohibit absolutely* any sale of an article of diet or drink, which is admittedly wholesome *per se;* but is sought to be made *fiat* contraband because it does not rise to a certain qualitative standard prescribed by or under authority of the Legislature. See: Rigbers v. City of Atlanta, 7 Ga. App. 411, 66 S. E. Rep. 991; Weaver v. Palmer Bros. 20, 270 U. S. 402, 46 Sup. Ct. Rep. 320, 70 L. Ed. 654.

If this present ordinance of the City of Tampa is properly sustained as a valid exercise of the city's police power, I see nothing left in the Constitution or laws of Florida to render void a like ordinance declaring that nobody shall sell liquor in bottles unless the liquor contains 75% pure grain alcohol, or that bread shall not be sold in standard loaves unless made out of Pillsbury (a high quality) flour. On like principle, ordinances could be passed saying that the

chocolate itself put into any bottled drink offered for sale as "chocolate milk" shall be 25% of the gross content of the bottle, and to propose an extreme case, the manufacturers of separated cream might, in the near future, successfully promote and secure the enactment of valid legislation by cities and towns declaring that no drink described as chocolate milk shall be sold in bottles unless it contains 75% pure cream (or butter fat) in its contents, or that firewood must consist entirely of lightwood knots holding a certain "fat" composition in its makeup.

I think that the ordinance challenged in this case is void because it prescribes an arbitrary absolute *prohibition* against the sale of a legitimate article of trade recognized by state statute as being in nowise detrimental to health or to the public welfare, but merely deficient in qualitative content as compared with an arbitrary standard set up by legislative *fiat* as being *sine qua non* for bottled chocolate milk sold within the limits of the City of Tampa.

In Weaver v. Palmer Bros. Co., 270 U. S., *supra,* the United States Supreme Court definitely held that absolute prohibition of sale and commerce in an article of trade could not be sustained as a mere matter of enforcement convenience or where regulations short of absolute prohibition would suffice for the protection of the public.

The power to regulate the sale of milk so far as is necessary for the prevention of impurities, adulterations and other similar detrimentals to health and welfare is undoubtedly well within the police power, but we are carrying that power a long way beyond its legitimate scope when we allow it to be used as a means of attaining commercial advantages for one group of people at the expense of others by countenancing an absolute prohibition of the sale of a food or drink that can be adequately regulated by a labelling

or container law or ordinance not amounting to a complete destruction of the producer's and dealer's constitutional right to liberty of trade as guaranteed to him by the fourteenth amendment to the U. S. Constitution, subject to regulation, but not prohibition, in cases like this one.

Hebe Co. v. Shaw, 248 U. S. 297, 39 Sup. Ct. Rep. 125, 63 L. Ed. 255, and kindred cases cited by appellee, are not analogous to this case nor in point here, because those cases really involve, in their ultimate analysis, the forbidden sale of products of one kind in effect mis-labelled as products defined by statutes to be something else as commonly understood when that something else was asked for in dealing with a vendor. The cited cases would be no authority in support of a law saying that no radio could be sold under any circumstances, under the name of radio or something else, unless it was equipped with 12 tubes, instead of a less number sufficient to satisfy the specifications of a prospective customer.

With one Congress, forty-eight state legislatures and some thirty-six hundred local governing bodies all vested with authority to oppress and stifle the profitable conduct of private business in the United States within the scope of their acknowledged police powers which are oftimes unwisely exercised at the behest of special blocs and groups and only nominally to promote the common welfare, I think the courts should give practical utility to the constitutional guarantee of life, liberty, property and the right to pursuit of happiness, by striking down regulations plainly beyond the sanctions of organic law in the premises, thereby making it possible for private business to so plan its affairs as to operate on more than a Congress to Congress, Legislature to Legislature, or City Council meeting to City Council meeting, basis—a condition of affairs greatly contrib-

uting to, if not the actual cause of, our great national depression.

## On Rehearing

Buford, J.—We have been very much impressed by the forceful argument presented herein on behalf of the appellant.

The chief infirmity of his argument is that it is based on the erroneous premise that the ordinance under consideration is prohibitive and not regulatory, and further, that the ordinance does not deal with a compound. The ordinance does not prohibit the sale of chocolate milk but only prohibits the sale of "bottled chocolate milk" made of milk containing less than three and one-half per cent. butter fat.

Chocolate milk is a compound composed of whole or skimmed milk and chocolate or cocoa syrup. Chapt. 14762, Acts 1931. In 19 R. C. L. 864, it is said:

"It is well settled that it is within the ordinary police powers of a municipal corporation to prohibit the sale of milk below a certain standard of richness, since the character of milk is difficult for an unskilled person to detect, and the health and vitality of consumers and particularly of children are impaired by the constant use of milk of an inferior grade."

There the following authorities are cited, which support the text; *In re* Hoffman, 155 Cal. 114, 99 Pac. 517; 132 A. S. R. 75 and note; State v. Dupaguier, 46 La. Ann. 577, 15 So. 502, 49 A. S. R. 334 and note; 26 L. R. A. 162; Deems v. Baltimore, 80 Md. 164, 30 Atl. 648, 45 A. S. R. 339 and note, 26 L. R. A. 541; St. Louis v. Leissing, 190 Mo. 464, 89 S. W. 611, 109 A. S. R. 774 and note; 4 Ann. Cas. 112 and note, 1 L. R. A. (N. S.) 918 and note. St. Louis v. Grafman Dairy Co., 190 Mo. 507, 89 S. W. 627,

1 L. R. A. (N. S.) 926 and note. See also Foon, Vol. II, page 1102, 1109, *et seq.*

In the case of *In Re* Hoffman, *supra,* it was held:

"The Constitution (Article 11, Section 11), empowers a city to make and enforce within its limits 'all such local, police, sanitary and other regulations as are not in conflict with general laws.' It is insisted that, the state having thus provided a standard for pure milk, the attempt of the city ordinance to vary that standard creates a conflict in the law, with the necessary result that the ordinance must fall. Undoubtedly, if such a conflict exists, the ordinance must give way to the paramount law of the state. But does such a conflict exist? For, if it does not, then it is well settled that the mere fact that the state, in the exercise of the police power has made certain regulations does not prohibit a municipality from exacting additional requirements. So long as there be no conflict between the two, and so long as the requirements of the municipal by-law are not in themselves pernicious as being unreasonable or discriminatory, both will stand. *Ex parte* Hong Shen, 98 Cal. 681, 33 Pac. 799; *In re* Murphy, 128 Cal. 29, 60 Pac. 465; Bellingham v. Cissna, 44 Wash. 397, 87 Pac. 481. In the first case cited the principle is fully recognized and expounded, and assent is refused to the argument, there advanced, that an ordinance is in conflict with the general laws when it makes another and different regulation for the sale of an article of commerce than that provided by the statute of the state. In the last case cited the City of Bellingham had by ordinance declared it unlawful for an automobile to be driven on public streets at a greater rate of speed than six miles per hour. Subsequently, the state passed an Act prohibiting the driving of automobiles within the thickly settled or business portion of any

city at a greater speed than 12 miles an hour. There, as here, the State law was passed subsequent to the enactment of the municipal ordinance. There, as here, a conflict between the terms was urged but it was held, upon the soundest principles, that there was no conflict and that it was competent for the authorities of Bellingham to prescribe a rate of speed less than that which the State law permitted."

And in the same case it is said:

"Petitioner charges that this particular ordinance is unreasonable and in restraint of trade in exacting too high a standard for the milk permitted to be sold. In his petition he avers, 'that milk may come direct and pure in its natural state from the cow, and especially from Holstein cows, and yet be below the standard fixed by the city ordinance; and, upon his best information and belief, the milk used in his restaurant and upon which his conviction is based, could have been milk from Holstein cows.' This averment stands unchallenged and is, therefore, to be taken as true. *Ex Parte* Smith, 143 Cal. 370, 77 Pac. 180. It may be that a municipality may pass an ordinance imposing a standard for milk which would be unreasonable, oppressive, in restraint of trade, and therefore void. It may even be, for aught that this court can judicially know, that this ordinance is of that character. But the mere averment that milk below standard might come from one or another cow is not sufficient to tender an issue of this character. Nor is it any objection to the validity of the ordinance that its regulatory provisions and the penalty for its violation differ from those of the state law."

In Hebe Company v. Shaw, 63 Law. Ed. 255, it was said by the Supreme Court of the United States:

"It is argued that, as Hebe is a wholesome, or not unwholesome product, the statutes should not be construed to

prohibit it if such a construction can be avoided, and that it can be avoided by confining the prohibition to sales of condensed milk as such, under the name of condensed milk, as was held with regard to ice cream in Hutchinson Ice Cream Co. v. Iowa, 242 U. S. 153, 61 L. Ed. 217, 37 Sup. Ct. Rep. 28, Ann. Cas. 1917B 643. But the statute could not direct itself to the product as distinguished from the name more clearly than it does. You are not to make a certain article, whatever you call it, except from certain materials, the object plainly being to secure the presence of nutritious elements mentioned in the Act and to save the public from the fraudulent substitution of an inferior product that would be hard to detect. Savage v. Jones, 225 U. S. 501, 524, 56 L. Ed. 1182, 1192, 32 Sup. Ct. Rep. 715. By Section 5778 a food is adulterated if a valuable ingredient has been wholly or in part abstracted from it, and the effect of this provision upon skimmed milk is qualified only by Section 12,720, which states the stringent terms upon which alone that substance can be sold. It seems entirely clear that condensed skimmed milk is forbidden out and out. But if so, the statute cannot be avoided by adding a small amount of coconut oil. We may assume that the product is improved by the addition, but the body of it still is condensed skimmed milk, and this improvement consists merely in making the cheaper and forbidden substance more like the dearer and better one, and thus at the same time more available for a fraudulent substitute. It is true that so far as the question of fraud is concerned, the label on the plaintiffs' cans tells the truth, but the consumer in many cases never sees it. Moreover, when the label tells the public to use Hebe for purposes to which condensed milk is applied, and states of what Hebe is

made, it more than half recognizes the plain fact that Hebe is nothing but condensed milk of a cheaper sort.

We are satisfied that the statute as construed by us is not invalidated by the 14th amendment. The purposes to secure a certain minimum of nutritive elements and to prevent fraud may be carried out in this way even though condensed skimmed milk and Hebe both should be admitted to be wholesome. The power of the legislature 'is not to be denied simply because some innocent articles or transactions may be found within the prescribed class. The inquiry must be, whether, considering the end in view, the statute passes the bounds of reason and assumes the character of a merely arbitrary fiat.' Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 204, 57 L. Ed. 184, 188, 33 Sup. Ct. Rep 44. If the character or effect of the article as intended to be used 'be debatable, the legislature is entitled to its own judgment, and that judgment is not to be superseded by the verdict of a jury,' or, we may add, by the personal opinion of judges, 'upon the issue which the legislature has decided.' Price v. Illinois, 236 U. S. 446, 452, 59 L. Ed. 1400, 1405, 35 Sup. Ct. Rep. 892; Rast v. Van Deman, & L. Co., 240 U. S. 342, 357, 60 L. Ed. 679, 687, L. R. A. 1917A 421, 36 Sup. Ct. Rep. 370, Ann. Cas. 1917B 455. The answer to the inquiry is that the provisions are of a kind familiar to legislation and often sustained, and that it is impossible for this court to say that they might not be believed to be necessary in order to accomplish the desired ends. See further Atlantic Coast Line R. Co. v. Georgia, 234 U. S. 280, 288, 58 L. Ed. 1312, 1316, 34 Sup. Ct. Rep. 829."

It appears to us that if this ordinance applying only to *bottled* chocolate milk is to be held invalid, then Chapter 14762, Laws of Florida 1931, defining the word "Milk" and

fixing the standard of milk and prohibiting the sale of milk as such which does not meet the standard therein fixed, must also fall, but there is no question that such legislative Act is entirely valid in this regard.

If a law or ordinance or statute may require that milk when offered for sale to the public as such shall contain $3\frac{1}{2}\%$ of butter fat, we can see no reason why an ordinance or statute requiring bottled chocolate milk to be made with milk of no lower standard when it too is to be offered for sale to the public as a food, may not be valid.

With the question of the wisdom of the ordinance the courts are not concerned. That is a matter to be settled between the lawmakers and their constituents.

For the reasons herein stated and the reasons stated in the original opinion, the original judgment entered herein by opinion filed May 29th, 1935, is adhered to.

It is so ordered.

ELLIS, P. J., and TERRELL, J., concur.

BROWN, J., concurs in the opinion and judgment.

DAVIS, J., dissents on same grounds as stated on original hearing.