## CITY OF ST. LOUIS v. FISCHER, Appellant.

### In Banc, March 19, 1902.

1. **St. Louis Charter.** The charter of the city of St. Louis has all the force and effect of a charter emanating from the General Assembly.

2. ———: DAIRIES: PRESCRIBED LIMITS: COEXTENSIVE WITH CITY LIMITS. The charter of St. Louis gave the mayor and municipal assembly express power to prohibit cow stables' and dairies within prescribed limits, and to regulate the same, and under that power they had authority to pass an ordinance making it a misdemeanor to establish or maintain dairies without obtaining permission so to do by a proper ordinance, and to assess a reasonable punishment against the violators of such ordinance, and the power to prescribe the limits within which such dairies might be maintained also included the power to fix the boundaries of the city as the prescribed limits. In view of that power it was not incumbent upon the mayor and municipal assembly to designate certain districts within the city within which such dairies could be maintained, but they could make the prescribed limits coextensive with the city limits.

3. ———: ———: POWER TO PROHIBIT: AUTHORITY TO PRESCRIBE CONDITIONS. Where the city is given authority to prohibit dairies and regulate them within prescribed limits, an ordinance which says that no person shall establish or maintain a dairy within the city without permission of the mayor and municipal assembly is not void, on the theory that the city only had authority to absolutely prohibit any person from carrying on that business. The power to prohibit and to regulate confers the power either to prohibit altogether or to prescribe the conditions upon which they should remain.

4. ———: UNRESTRICTED POWERS: POSSIBILITY OF DISCRIMINATION. Where the city has unrestricted power to prohibit and regulate dairies within its corporate limits, the court will not declare void an ordinance prohibiting their establishment or maintenance without permission of the city, because, perchance, the city may sometime discriminate against one citizen wishing to carry on such business and favor another. The courts will presume that the municipal assembly will act impartially in such matters; and not to permit them where they would be a nuisance is not partiality.

City of St. Louis v. Fischer.

5. ———: MUNICIPAL ORDINANCE: UNIFORM OPERATION: FOURTEENTH
AMENDMENT. An ordinance that operates on all persons alike is
not obnoxious to the fourteenth amendment to the Constitution of
the United States.

6. ———: ———: NUISANCE: CONSTITUTIONALITY. Nothing in the
Constitution of the United States or in that of this State secures to
a man the right to maintain a nuisance, or prohibits municipalities
from prohibiting or regulating unwholesome trades or occupations,
when they are given authority so to do by the State.

Appeal from St. Louis Court of Criminal Correction.—*Hon.
Willis H. Clark*, Judge.

AFFIRMED.

*Louis A. Steber* for appellant.

(1) (a) We are dealing in this case with the right of
property and not with the question of nuisance. (b) A dairy
or cow stable has never been considered or treated as a nui-
sance *per se*, or prima facie. If complained of as a nuisance,
that question must be tried in a proper proceeding as a ques-
tion of fact. (2) Section 5 of the ordinance is in violation of
the fourteenth amendment to the Constitution of the United
States. (3) (a) Section 5 of the ordinance is in violation of
article 2, section 30, of the Constitution of Missouri. In de-
priving him of the use of the property, it deprives him of
the property itself. (b) The personal liberty of the citizen
and his right of property can not be thus invaded under the
guise of a police regulation. (c) "If such an ordinance as the
one in question be upheld, then all our constitutional provis-
ions for the protection of property rights are meaningless and
worthless."

*B. Schnurmacher* and *Bass & Brock* for respondent.

(1) The ordinance in question prohibiting the erecting,
building or establishing of a dairy or cow stable within the city

limits without permission from the municipal assembly by ordinance, and prohibiting the maintaining of a dairy or cow stable not in operation at the time of the approval of the ordinance, without similar permission, is a valid municipal enactment. St. Louis v. Howard, 119 Mo. 47. (2) The ordinance is a valid exercise of the police power delegated by the State to the city by paragraph 6 of section 26 of article 3, of the city charter, which authorizes the municipal assembly and the mayor to "prohibit the erection of cow stables and dairies and to remove and regulate the same." Tiedeman's State and Federal Control of Persons and Property, p. 731; 2 Kent's Com. 340; Parker & Worthington on Public Health and Safety, p. 291; St. Louis v. Weber, 44 Mo. 547; In re Linahan, 72 Cal. 114; State v. Broadbelt, 89 Md. 565. (3) The ordinance is also a valid exercise of the power given to the city by paragraph 14 of section 26 of article 3, known as the "General Welfare Clause." Ferrenbach v. Turner, 86 Mo. 416; City of Tarkio v. Cook, 120 Mo. 1; State v. Fisher, 52 Mo. 174; State v. Bixman, 62 S. W. 828; Eichenlaub v. St. Joseph, 113 Mo. 395; Slaughter House Cases, 16 Wall. 36; Sohier v. Trinity Church, 109 Mass. 1. (4) No legislative enactment will be declared unconstitutional unless clearly so, and every presumption is in favor of its validity. State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Henderson, 60 S. W. 1093; State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. Yancy, 123 Mo. 391; Ewing v. Hoblitzelle, 85 Mo. 64; St. Louis County Court v. Griswold, 58 Mo. 192; State v. Able, 65 Mo. 357. The same rule applies to municipal ordinances. City of Lamar v. Weidman, 57 Mo. App. 507. (5) The city has express authority under its charter to "prohibit" cow stables and dairies, and to "remove and regulate" the same. Having such power by express grant, the mere passage of an ordinance makes out a prima facie case that it is reasonable, and the courts will not review the question as they will where the power is merely incidental or implied. Skinker v. He-

man, 148 Mo. 349; St. Louis v. Green, 70 Mo. 562; s. c., 7 Mo. App. 468.

## In Division Two.

GANTT, J.—This is a civil action by the city of St. Louis to recover a fine of $100 for the violation of section 5 of a city ordinance of said city, numbered 18407, approved April 6, 1896, which said section is in these words:

"No dairy or cow stable shall hereafter be erected, built or established *within the* limits of this city without first having obtained permission so to do from the municipal assembly by proper ordinance, and no dairy or cow stable not in operation at the time of the approval of this ordinance shall be maintained on the premises unless permission so to do shall have been obtained from the municipal assembly by proper ordinance. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than one hundred dollars nor more than five hundred dollars."

The complaint charged that defendant, in the city of St. Louis, and State of Missouri, was, on the sixteenth day of November, 1898, and on divers other days and times prior thereto, the occupant of certain premises known as 7208 and 7210 North Broadway in said city, and did then and there erect, build, and establish on said premises a dairy and cow stable without first having obtained permission so to do from the municipal assembly by proper ordinance, and furthermore did at said times and place maintain said dairy and cow stable without having obtained permission from said municipal assembly of said city by proper ordinance, and that said dairy and cow stable was not in operation at the time of the approval of said ordinance No. 18407, to-wit, April 6, 1896, contrary to the said ordinance.

The defendant was found guilty in the police court and appealed to the court of criminal correction. In the last mentioned court he moved to quash the complaint on nine grounds, as follows:

1.    Because the statement does not set forth facts sufficient to constitute any offense under the ordinances of the city of St. Louis.

2.    Because section 5 of said ordinance No. 18407 is unconstitutional and void for the reason that it operates to deprive a person of property without due process of law.

3.    Because said section 5 is void as being unreasonable and oppressive to the citizen and the property-owner.

4.    Because said section is void, there being no power or authority granted to the municipal assembly by the charter of the city of St. Louis to pass the same.

5.    Because said section is retrospective in its nature and application and, therefore, in violation of the rights of private property.

6.    Because said section 5 is void, being a delegation of the powers of the municipal assembly.

7.    Because said section is in violation of section 30, article 2, of the Constitution of the State of Missouri.

8.    Because said section 5 is in violation of section 4 of article 2 of the Constitution of Missouri.

9.    Because said section 5 is void as being in violation of the fourteenth amendment to the Constitution of the United States, in that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any State deprive any person of life, liberty or property without due process of law nor deny to any person within its jurisdiction the equal protection of the laws.

The court of criminal correction overruled this motion, and thereupon entered his plea of not guilty, and the cause was submitted to that court upon an agreed statement of facts, without a jury, and the court found defendant guilty of a vio-

lation of said ordinance and fined him $100, from which he appeals to this court.

The agreed statement of facts is in these words:

"It is hereby agreed and stipulated by and between the parties to the above entitled cause by their respective attorneys, that said cause may be submitted and tried upon the following statement of facts, to-wit:

"The plaintiff, the city of St. Louis, is a municipal corporation, organized and existing under the laws of the State of Missouri, and defendant is and was on the sixteenth day of November, 1898, the occupant of certain premises known as 7208 and 7210 North Broadway, in the city of St. Louis, State of Missouri, upon which premises, at said time, stood a dwelling house and frame stable which had been erected and built prior to the occupancy of said premises by defendant.

"At the time of the approval of ordinance No. 18407 of said city, said premises, buildings, and stable, were occupied and in use by a certain party other than this defendant for the purpose of operating a dairy and maintaining a cow stable, and this defendant was, at the same time, operating a dairy and maintaining a cow stable on premises known as No. 6305 Bulwer avenue, in said city. Sometime in the month of March, 1898, the said premises at Nos. 7208 and 7210 North Broadway were abandoned as a dairy and cow stable, and the dwelling house thereon was occupied by a private family for residence purposes only, and no dairy or cow stable was maintained on said premises from March, 1898, until some time in September, 1898. In September, 1898, defendant moved his cows, about thirty in number, from premises No. 6305 Bulwer avenue, on to premises Nos. 7208 and 7210 North Broadway, placed them in the old stable, and did proceed to conduct upon said premises a dairy establishment and produce from said cows milk, and sell the same to his customers for profit, and was so doing on the said sixteenth day of November, 1898, without having first obtained permission so to do from the

municipal assembly by proper ordinance, as provided by section 5 of ordinance No. 18407, of the city of St. Louis, approved April 6, 1896.

"It is hereby stipulated and agreed by the parties to this cause by their respective attorneys that the printed ordinance marked Exhibit A, which is attached to and made a part of this agreed statement of facts, is a full, true and correct copy of said ordinance No. 18407, and may be considered in evidence in this cause."

The transcript in this case is somewhat difficult to understand. It is either all record proper, or all bill of exceptions. There is nothing in the nature of the record proper showing a trial, the entry of judgment, the filing of any of the motions, or the action taken by the court thereon. There is nothing in the transcript showing any copy of the affidavit for appeal, the bond for appeal, or the order granting an appeal to this court. At the same time these matters are set forth as if in a bill of exceptions, signed by the judge of the trial court.

I. ·The city of St. Louis is a municipal corporation, existing under a charter framed and adopted by the qualified voters therein on August 22, 1876, which took effect October 22, 1876 (State ex rel. v. Sutton, 3 Mo. App. 388), pursuant to the provisions of sections 20, 21, 22, 23, 24 and 25 of article 9 of the Constitution of Missouri, 1875, and has all the force and effect of a charter which emanates from the General Assembly. [Kansas City v. Oil Co., 140 Mo. 458.] By the sixth paragraph of section 26 of article 3 of the said charter, the mayor and the municipal assembly of St. Louis are given power within the city by ordinance not inconsistent with the Constitution or any law of this State or the charter itself, "to *prohibit* the erection of soap factories, stock yards, and slaughter houses, pig pens, *cow stables and dairies*, coal oil and vitriol factories within prescribed limits, and to remove and regulate the same; and to regulate or prevent the carrying

on of any business which may be dangerous or detrimental to the public health."

On April 6, 1896, the mayor and municipal assembly passed the ordinance set out in the accompanying statement making it a misdemeanor for any person thereafter to erect, build or establish or maintain within the limits of said city any dairy or cow stable without having first obtained permisison so to do from the municipal assembly by a proper ordinance and prescribing a penalty for a violation thereof.

At the outset it will be observed that *express power* is conferred upon the mayor and municipal assembly to *prohibit*, and to remove and regulate cow stables and dairies *within prescribed limits.*

To the mayor and assembly is confided the power of fixing and *prescribing* the limits within which no dairy or cow stable shall be built or maintained in the city of St. Louis. As the grant in the charter is express, we are relieved from any discussion to demonstrate that the dairy business is of a character that brings it within the police power of the State and properly subjects it to rigid rules of regulation, and even absolute prohibition in large and populous cities. Indeed, few occupations are so peculiarly liable to cause injury by the sale of impure milk to people who purchase milk as a necessary article of food, or which are more generally regarded as nuisances, even under favorable circumstances.

That the people of the State could delegate this power to the municipality is no longer open to dispute. It clearly falls within the proper function of municipal government.

As the people of the State have conferred the power upon the city without restriction, it was entirely within the discretion of the mayor and assembly to prescribe the limits, and it was competent to fix the boundaries of the city as the prescribed limits and this was done by ordinance 18407.

Counsel for defendant insists that the municipal assembly must have first designated certain districts within the city

by metes and bounds, within which no dairy or cow house should be erected or maintained, but the charter does not so command. It nowhere limits the prohibited territory to less than the whole city. Counsel for defendant cites In re Linehan, 72 Cal. 114, as sustaining his position. But reference to that case will show that the charter power was "to exclude *from certain limits*" the obnoxious occupations, and the city council had merely defined a district bounded by certain streets in which it should be unlawful for any person to keep more than two cows and the Supreme Court upheld the ordinance. No question of the power of the city of San Francisco to make such an ordinance applicable to the whole of said city arose in that case and nothing in the decision supports the proposition now advanced that the city of St. Louis must necessarily prescribe a district therein less than its municipal boundaries, and we have no doubt of the power under the charter to make the prescribed limits co-extensive with the city limits, and this we construe this ordinance to have done.

But the learned counsel for the defendant argues that because the city has not made the prohibition absolute and prevented all persons from erecting or maintaining dairies and cow stable anywhere in the city but has deemed it proper to say that no person should erect or maintain a dairy or cow stable without permission first obtained by a proper ordinance, this ordinance is void; that it provides for special privileges to one man by special ordinance which it might deny to another man, his next door neighbor. We think his position is entirely untenable. The charter confers not only the power *to prohibit,* but to remove and *regulate* and it was entirely competent for the assembly to decline to prohibit dairies altogether, but to impose upon all persons desiring to erect or maintain a dairy or cow stable to first obtain permission from the mayor and assembly by a duly enacted ordinance. Having absolute power to prohibit, it could make its own conditions. [Railroad v. Kirkwood, 159 Mo. 239.] As was said

in St. Louis v. Howard, 119 Mo. loc. cit. 46: "Regulation means a rule or order for management or government. So that paragraph 6 of section 26 of article 3 of the charter empowers the city (*by ordinance, of course,* for that is the only way the city can legislate) to prescribe rules whereby slaughter houses may be erected or operated, or whereby such erection or operation may be checked or restrained *either partially* or *in toto*." But in that case the defendant was acquitted because, although the city had plenary powers in this regard, it had not seen fit to exercise them by an ordinance making it a misdemeanor to carry on or operate a slaughter house "*without first* having *obtained* permission so to do from the municipal assembly by proper ordinance."

In this case, the city has passed just such an ordinance and made it co-extensive with the boundaries of the city, and just such an ordinance met the approval of this court in St. Louis v. Howard, 119 Mo. 47, the only difference being that in the last mentioned case it was forbidden to erect a slaughter house within three hundred feet of any dwelling house, whereas in this ordinance dairies are prohibited throughout the city unless the assembly shall first permit them by proper ordinances.

We are asked to declare this ordinance void in the face of the unrestricted power in the charter because, forsooth, the assembly may at sometime discriminate against one man and favor another. We can not and shall not indulge any such presumption against the integrity of the municipal assembly, but shall, as was said in St. Louis v. Howard, 119 Mo. 50, assume that the municipal assembly, before granting permission, will inquire and determine whether the place and the neighborhood is a proper one in which to allow a dairy to be maintained and will act impartially. "Such favorable presumptions are constantly indulged in regard to legislative action." [State ex rel. v. Mead, 71 Mo. 272.]

It is at once apparent that no ironclad rule can fit every

case. The assembly may well determine that the keeping of a dairy in the outskirts of a city, where the population is sparse and the areas large, would not be a nuisance, whereas to permit a dairy in the thickly populated portion of the city, or near a schoolhouse, church, or hospital, would seriously endanger the public health, and in the exercise of its plenary powers permit it in the one case and prohibit it in the other without being obnoxious to the criticism of partiality. Under the charter it is given legislative discretion in this matter. In our opinion the ordinance prescribed the limits and it was entirely proper and lawful to require every person desiring to erect or maintain a dairy to obtain permission by a proper ordinance and such an ordinance is the only defense to an action like this. [St. Louis v. Howard, 119 Mo. 47.]

We can see no more objection to such an ordinance than could be urged against the granting of a franchise to run a street railroad on a particular street. A railroad laid in a street without authority is a nuisance and yet it has never been held that an ordinance to be valid must permit everybody to maintain railways in all the streets. It is a matter within the authority of the assembly.

II. As to the objection that the ordinance violates the fourteenth amendment to the Constitution of the United States, it is sufficient to say that it does not contravene that amendment because it operates upon all persons alike, and that every man holds his property subject to the maxim that he must so use it as not to injure his neighbor. Nothing in that amendment has shorn the States of their police power to prohibit or regulate unwholesome trades and occupations. [Slaughter House Cases, 16 Wall. 36; Tiedeman's State and Federal Control of Person and Property, p. 731; In re Linehan, 72 Cal. 114; State v. Broadbelt, 89 Md. 565; 2 Kent's Com., 340; St. Louis v. Howard, 119 Mo. 47; Eichenlaub v. St. Joseph, 113 Mo. 395.] Nothing in the Constitution of the United States or of this State secures to any man the right to maintain a

City of St. Louis v. Fischer.

nuisance to the discomfort and peril of the health of his neighbor.

It is not deemed necessary to answer seriatim all the objections urged to the constitutionality of this ordinance. We have considered them all and are satisfied they are not tenable or sound.

There is nothing retrospective in the application of this ordinance to defendant. It was adopted in 1896. He began without the permission of a proper ordinance to carry on and maintain this dairy at the premises mentioned in the complaint in 1898, long after the ordinance was in force. The ordinance is leveled at the maintenance of a dairy, the keeping of cows for the sale of milk, and the mere fact that the premises had once been so occupied prior to 1896, but subsequently abandoned for such a use, did not authorize defendant to start up a new dairy on said premises without the necessary condition precedent of a lawful ordinance. Accordingly we hold his conviction was proper and the judgment is affirmed. *Burgess, J.,* concurs in these views.

## In Banc.

. PER CURIAM:—Upon a rehearing by the Court in Banc, the foregoing opinion of GANTT, J., in Division Two, is adopted by the Court in Banc. *Burgess, C. J., Robinson, Brace, Marshall* and *Valliant, JJ.,* concurring therein; *Sherwood, J.,* dissenting.