CITY OF ST. LOUIS v. LIESSING, Appellant.

In Banc, October 20, 1905.

1. **MILK: Police Power: Standard.** The city of St. Louis, under its charter, has the right, in safeguarding the health of its citizens and in preventing deception upon them, to fix a reasonable standard of purity, to be scientifically ascertained, of milk and cream sold within the city, and to prohibit the sale of either of a quality inferior to that fixed by the ordinance.

2. ——: ——: **Liberty.** In doing so the city does not take from the vendor of milk any of his constitutional rights to property and the gains of his own industry.

3. ———: **Standard: Constitutionality: Matter for Court.** The courts, and not the jury, determine whether an ordinance fixing a standard of milk sold in a city is constitutional, and whether it is so harsh and unreasonable as to be void. If the article is universally conceded to be so wholesome and innocuous that the court may take judicial notice of that fact, it will not permit the law-making body to absolutely prohibit it. But where there is a dispute or doubt as to its wholesomeness, as there is as to milk, the legislative body can either prohibit or regulate its sale; and in doing so it can fix a standard for wholesomeness, and prohibit the sale of milk which does not meet the standard.

4. ———: ———: **Ash: Reasonableness.** The ordinance prohibited the sale of milk showing by an analysis less than seven-tenths of one per cent of ash, which was in effect a fixing of the amount of milk fats the milk must contain. *Held*, that it was competent for the municipal assembly to fix the standard, *and* that there is nothing unreasonable or oppressive in the standard fixed.

5. ———: ———: **Single Officer: Absolute Power: Due Process of Law.** Where the ordinance fixes the standard of purity for milk and prescribes the method by which it may be tested and its quality determined, in case of a contested analysis, it does not commit to a single officer (the city chemist) absolute power of controlling the sale of milk. The jury are not bound by the analysis of the city chemist, but it is the right of the seller, when prosecuted for selling milk of an inferior quality, to have it tested by any other competent chemist and by the same standard; and so long as that right is his, it cannot be said that he is deprived of due process of law in the protection of his personal rights and property.

6. ———: **Inspection Fee: Occupation Tax.** An ordinance which exacts a regulation fee of one dollar for each vendor of milk in the city of St. Louis, and an occupation tax of $2.50 for each six months of smaller vendors, and twenty-five dollars of the wholesaler, is not oppressive and violates no constitutional right.

7. **SEVERABLE ORDINANCE: Invalidity of Certain Provisions.** Where certain provisions of an ordinance under which the prosecution is begun and maintained are valid and are severable from and not dependent upon other invalid parts, the whole ordinance will not be declared void unless the invalid parts will defeat the general object of the enactment.

8. **ORDINANCE: Title: More Than One Subject: Vending Milk and Cream.** Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of ordi-
Vol 9 0mo—30

nances; the generality of the title is not an objection so long as it is not made to cover legislation incongruous in itself. Hence, *Held,* that the title of an ordinance "to license and regulate the sale of milk and cream, to provide for the inspection thereof, and to prescribe penalties to prevent the sale and distribution of any but pure, wholesome milk and cream, and to fix the limit of its composition and defining its quality," does not contain more than one subject, and the general provisions of the ordinance being germane to the one subject of regulating the business of vending milk and cream, the ordinance is not invalid on the ground that the subject-matter is not clearly expressed in the title.

9. ———: **Not In Evidence: Consideration: Repeal.** Courts will not take judicial notice of city ordinances. Where, therefore, it is contended that the ordinance under which defendant was prosecuted is void because it conflicts with a former ordinance not expressly repealed, as the charter requires, and this latter ordinance was not offered in evidence at the trial, the appellate court cannot consider that assignment of error.

10. **PUBLIC OFFICER: Qualifications: Enlargement of Charter By Ordinance.** Where the charter requires the city chemist to be appointed by the mayor and approved by the council, and that is done, it is no objection to the validity of an ordinance that it requires the appointment to be approved both by the board of health and the council.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

AFFIRMED.

*E. F. Stone* for appellant.

(1) The production, sale and distribution of dairy products is a legitimate and lawful occupation or business, conducted as a matter of right and not as a privilege. Unusual and arbitrary restrictions cannot be lawfully imposed upon it by ordinance, nor can harsh, expensive and burdensome provisions be enacted against persons engaged in an innocent and useful business so as to deprive them of the right to devote their property thereto and obstruct their freedom and lib-

erty. Ex parte Withness, 98 Cal. 78; Matter of Jacobs, 98 N. Y. 110; State ex rel. v. Ashbrook, 154 Mo. 395. An ordinance cannot, without reason, arbitrarily infringe upon the liberty or the property rights of any person or class of persons within the protection of the Constitution, under the plea that it is a police regulation for the protection of the public health. It must not go further than is necessary and appropriate, and must not require things to be done, burdens to be carried, property consumed or rights sacrificed when unnecessary for the protection of health. People v. Gillson, 109 N. Y. 389; Slaughter-House cases, 16 Wall. 106; State v. Julow, 129 Mo. 163; State v. Fisher, 59 Mo. 174. (2) An ordinance may be adjudged unreasonable, oppressive, partial and vexatious by the courts and declared null and void, and it must be reasonable, impartial, and not oppressive or it will be declared invalid and unconstitutional. Cooley, Const. Lim., 280; Beach on Pub Corp., sec. 512; Freund on Police Power, sec. 142; Corrigan v. Gage, 68 Mo. 545; Fire Dept. v. Gilmore, 149 N. Y. 453; Ritchie v. People, 155 Ill. 98; Frost v. Chicago, 178 Ill. 250; Fryman v. Chicago, 78 Ill. 405; City of Clinton v. Phillips, 58 Ill. 102; State v. Railroad, 68 Minn. 385; State v. Mayor, 37 N. Y. L. 351; Nicoulin v. Lowry, 49 N. Y. L. 394; Matter of Frazee, 63 Mich. 397; Kirkham v. Russell, 76 Va. 962; Yates v. Milwaukee, 10 Wall. 497; Kneedler v. Bonough, 100 Pa. St. 373; White v. Railroad, 44 Mo. App. 542; City v. Starke, 93 Mo. App. 70. (a) The mode or manner of the exercise of a power expressly granted may be so unreasonable or oppressive as to call for judicial intervention. Halpin v. Campbell, 71 Mo. 493; 1 Dillon on Mun Corp. (3 Ed.), sec. 328; McQuillin, Mun. Ord., secs. 78 and 185; Kirkham v. Russell, 76 Va. 961; Zumalt v. Railroad, 71 Mo. App. 670. (b) And an ordinance must be fair, impartial and uniform in its operation. McQuillin, Mun. Ord., sec. 193; Nichols v. Walter,

37 Minn. 273; State v. Sheriff, 48 Minn. 241; State ex rel. v. Currens, 111 Wis. 431; Caldwell v. Texas, 137 U. S. 698; Railroad v. Matthews, 174 U. S. 104; Plessy v. Ferguson, 163 U. S. 550; Lawton v. Steele, 152 U. S. 143.   (3) An ordinance which commits to the will of a single official the practically absolute power of controlling the use of some well-known means of commercial or social activity, not a nuisance, is prima facie unreasonable and oppressive, beyond the domain of law, and will be pronounced unconstitutional and void. Tiedman on Mun. Corp., sec. 151; Mayor v. Radecke, 49 Md. 218; Matter of Frazee, 63 Mich. 396; St. Louis v. Karr, 85 Mo. App. 617.   And will be declared unreasonable and oppressive in its operation when taken as an entirety.   Ex parte Withness, 98 Cal. 85; Willow Spgs. v. Withaupt, 61 Mo. App. 275.   Section 1 of Ordinance 20808 provides that "the inspection and control of the quality of milk and cream produced, sold or offered for sale in the city of St. Louis is hereby placed in charge of the city chemist."   The word "control" means "to check, restrain, govern, dominate, direct, regulate and have under command."   7 Am. and Eng. Ency. Law, 457.   The ordinance must contain permanent legal provisions, operating generally and impartially, for its enforcement cannot be left to the will of any officers of the corporation.   Bennet v. Birmingham, 31 Pa. St. 15; Baltimore v. Radecke, 49 Md. 217. (4)   Duties and powers imposed by charter upon designated departments or officers cannot be by ordinance delegated or surrendered to other officers or departments.   Oakland v. Carpenter, 13 Cal. 545; State v. Fiske, 9 R. I. 94; Dillard v. Webb, 55 Ala. 468; McQuillin, Mun. Ord., sec. 85; Benjamin v. Webster, 100 Ind. 15; Bryan v. Page, 51 Tex. 535; Warner v. People, 43 Am. Dec. 740.   (5) Ordinance No. 20808 is invalid and ineffectual as an entirety, as being in conflict with prior general ordinance No. 19991, sections 478, 481, 483 and 484, said prior

general ordinance not having been expressly repealed, as required by the charter. Municipal Code of St. Louis, pp. 223, 536, 537; St. Louis v. Sanguinet, 49 Mo. 581; Lemovine v. St. Louis, 72 Mo. 406. (6) Said ordinance is unconstitutional and void, because it violates the 14th amendment of the Constitution of the United States which provides: ''Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,'' and also, section 30, of art. 2 of the Constitution of Missouri, ''That no person shall be deprived of life, liberty, or property without due process of law.'' State v. Julow, 129 Mo. 172; 2 Story on Const. (5 Ed.), sec. 1950; People ex rel. v. Otis, 90 N. Y. 48; State v. Loomis, 115 Mo. 307; State v. Walsh, 136 Mo. 406; Cooley, Const. Lim. (6 Ed.), 484; Bank v. Oakley, 4 Wheat. 236; Wallys Heirs v. Kennedy, 2 Yerg. 554. And ''no State shall make or enforce any law which shall abridge the privilege or immunities of citizens of the United States.'' In re Jacobs, 98 N. Y. 98; State v. Loomis, 115 Mo. 307. (7) When an ordinance upon which all legislation pertaining to the same subject-matter rests, and which prescribes the duties and powers of the officer or officers who are to enforce the law should be invalid, then all subsequent ordinances resting thereon for their enforcement, application and operation are invalid, for the reason that they must be construed together. Ordinance 17157 is void upon its face as being in violation of charter provision relating to the exercise of the appointing power, and the removal of officers and their assistants. Sec. 5, 7, 8, 9, 11 and 14, art. 4, charter; State v. Rackliffe, 164 Mo. 460; Carleton v. People, 10 Mich. 258. An ordinance which adds to, takes away or limits in any manner the mode or method of the exercise of the power of appointment and removal conferred by charter is void and ineffectual. State ex rel v.

Johnson, 123 Mo. 43; State v. Hamey, 168 Mo. 167; Horan v. Lane, 53 N. J. L. 275; Commonwealth v. Crogan, 155 Pa. St. 448; Saunders v. Lawrence, 141 Mass. 380; McQuillin, Mun. Ord., secs. 4 and 15; People ex rel. v. Mount, 186 Ill. 568; Volk v. Newark, 47 N. J. L. 117; Uffert v. Vogt, 65 N. J. L. 621; Lowe v. Commonwealth, 3 Met. (Ky.) 237; State v. Wiltz, 11 La. Ann. 439; People v. Draper, 15 N. Y. 552; People v. Raymond, 37 N. Y. 433. Corporate acts must be done by such officers or agents, and in such manner as the charter directs, and the expression of one mode of appointment or removal in the charter, excludes all others, and an ordinance altering or modifying the mode is void. City v. Eddy, 123 Mo. 558; McQuiddy v. Brannock, 70 Mo. App. 546; State v. Lund, 167 Mo. 228; People v. Albertson, 55 N. Y. 55. And defendant can in this action set up as a defense the invalidity and unconstitutionality of either or both of said ordinances. The constitutionality of any law under which any right is claimed or prosecution is had may be inquired into. Meagher v. Count of Story, 5 Nev. 250; State v. Morris, 47 La. Ann. 1660; Cincinnati v. Craft, 8 Ohio Dec. 672; Austin v. Austin, 87 Tex. 330; State v. Butler, 178 Mo. 336; Ex parte Snyder, 64 Mo. 58. (8) The city has power under its charter, "By ordinance not inconsistent with the Constitution or any law of this State, or of this charter," "to make provision for the inspection of milk," nowhere is it authorized to prohibit directly or indirectly the sale of milk. Nor is it expressly empowered to regulate the sale of milk, and if such power exists at all, it is but an implied or incidental one. Under the power to inspect, the city chemist can not directly or indirectly prohibit or prevent the sale of milk that is not unwholesome or unhealthy. An ordinance that operates to prohibit the sale of good and healthy milk would be void. Even the power to regulate will not be construed to include the power to pro-

hibit. Surely, then, the power to provide for inspection cannot include the power to prohibit. Even the power to inspect and regulate will not include the power to prohibit. (9) Ordinances which tend to restrain competition and create monopolies, or tend to confer exclusive privilege are generally condemned. "They are void because they interfere with the liberty of the individual to pursue a lawful trade or employment." Chicago v. Rumpf, 45 Ill. 90; City of Cairo v. Fuechter, 159 Ill. 155; People v. Gas Trust Co., 130 Ill. 268; McQuillin, Mun. Ord., sec. 189; Yick Wo v. Hopkins, 118 U. S. 371; Butchers' Union v. Crescent City Co., 111 U. S. 762; Marshall & Bruce Co. v. City, 71 S. W. 618.

*Chas. W. Bates* and *Wm. F. Woerner* for respondent.

(1) None of the objects sought to be secured by municipal government is of more importance than the health of the inhabitants, and ordinances or statutes having such in view must be upheld as an exercise of the police power of the State delegated to the city. St. Louis v. Galt, 179 Mo. 18; Ferrenbach v. Turner, 86 Mo. 420; Smith's Mod. L. Mun. Corp., sec. 1322; Crossman v. Lurman, 192 U. S. 197; People v. Girard, 145 N. Y. 109. Nor do the provisions of the Federal Constitution and its amendments, invoked by appellant, have any bearing. These were not designed to interfere with the exercise of the police power by the States, and nothing in any of those fundamental provisions has shorn the States of their police power to regulate trades and occupations so as to guard against injury to the public, nor of regulating the use of property so as to prohibit a use which is injurious or dangerous to the community. St. Louis v. Fischer, 167 Mo. 664 (affirmed 194 U. S. 361); State v. Schlenker, 112 Iowa 650; Powell v. Pennsylvania, 127 U. S. 684; Slaughter House Cases, 16 Wall.

62; Holden v. Hardy, 169 U. S. 392. If the wholesomeness of a food article is at all bona fide disputable—that is, unless it be so universally conceded to be wholesome and innocuous that the courts may take judicial notice thereof—the legislative determination is conclusive, and the courts will not interfere. State v. Layton, 160 Mo. 497; State v. Schlenker, 112 Iowa 650. Authorities are numerous which directly uphold the right of municipalities to fix a standard of purity for milk, and the test by which the analysis shall be governed, and to prohibit the sale, or custody with intent to sell, of any milk not measuring up to that standard; and this, too, though in a number of these ordinances such standard had been placed so high that it could not be maintained by the milk of all cows, though perfectly healthy, at all seasons of the year, nor at any time by the milk of healthy cows fed on inferior food. Ordinances of the kind here in issue are not oppressive or unreasonable and do not operate arbitrarily to prohibit the pursuit of a lawful and useful business, but serve to regulate the same by guarding against its pursuit in a manner resulting in possible public deception and grave danger to public health; neither are such ordinances in violation of any of the guaranteed State or Federal Constitutional rights. State v. Campbell, 64 N. H. 402; State v. Smyth, 14 R. I. 100; Weigand v. District of Columbia, 22 App. (D. C.) 559; State v. Fourcade, 45 La. Ann. 717; State v. Dupaquier, 46 La. Ann. 581; State v. Stone, 46 La. Ann. 151; Deems v. Mayor of Baltimore, 80 Md. 164; Blazier v. Miller, 10 Hun 435; Norfolk v. Flynn, 101 Va. 473; State v. Smith, 69 Ohio St. 196; Com. v. Tobias, 143 Mass. 129; Com. v. Proctor, 165 Mass. 38; State v. Nelson, 66 Minn. 166; People v. Kibler, 106 N. Y. 321; State v. Schlenker, 112 Iowa 642; McQuillin on Mun. Ord., sec. 484. (2) The power of abuse hardly exists in this case. But if it did, yet the authority of decision must always be lodged somewhere

and in some person or body. The possibility of the abuse of power does not disprove its existence; that possibility exists even in reference to powers that are conceded to exist, and it is no legal objection that it is vested as provided in the ordinance. Powell v. Pennsylvania, 127 U. S. 686; Crowley v. Christensen, 137 U. S. 91; Fischer v. St. Louis, 194 U. S. 372; Eureka v. Wilson, 173 U. S. 32; Gundling v. Chicago, 177 U. S. 183. (3) (a) The courts will not interfere, if the ordinance is a police regulation or is otherwise expressly within the power of the municipality to enact (as it is in this case), unless it appear that the act is the creation of fraud, or is the product of legislative whim or caprice merely, or requires an impossibility, or is in violation of common right, and imposes a burden upon a citizen without any corresponding benefit to him or the community of which he is a constituent. St. Louis v. Knox, 6 Mo. App. 247; St. Charles v. Elsner, 155 Mo. 681; State v. Layton, 160 Mo. 498; Skinker v. Heman, 148 Mo. 356; Littlefield v. State, 42 Neb. 223; Tarkio v. Cook, 120 Mo. 9; State v. Schlenker, 112 Iowa 647; Weigand v. District of Columbia, 22 App. (D. C.) 559; State v. Campbell, 64 N. H. 402; State v. Dupaquier, 46 La. Ann. 577; State v. Stone, 46 La. Ann. 147; State v. Smyth, 14 R. I. 100; Norfolk v. Flynn, 101 Va. 474. (b) This ordinance is reasonable, consonant with the general powers and purposes of the city, and consistent with the laws and policy of the State, and hence valid, even if it had been passed under the incidental or implied powers of the municipality. St. Louis v. Galt, 179 Mo. 18; Lawton v. Steele, 152 U. S. 136; Gundling v. Chicago, 177 U. S. 188; Littlefield v. State, 42 Neb. 223; State v. Layton, 160 Mo. 474; St. Louis v. Weber, 44 Mo. 550. (4) Partial invalidity of ordinance does not make this provision void. St. Louis v. Railroad, 89 Mo. 47; County Court v. Griswold, 58 Mo. 199; Tarkio v. Cook, 120 Mo. 7; People v. Windholz, 92

App. Div. 569; Lamar v. Weidman, 57 Mo. App. 514; Rockville v. Merchant, 60 Mo. App. 368; State v. Bockstruck, 136 Mo. 353. (5) The constitutional provision that no bill shall contain more than one subject, which shall be clearly expressed in the title, is not applicable to municipal ordinances. Tarkio v. Cook, 120 Mo. 7; Traction Co. v. Chicago, 207 Ill. 544. The charter provision to the same effect is also invoked. This ordinance is not violative of that provision. All its provisions are germane to the one subject of regulating the business of vending cream and milk. St. Louis v. Weitzel, 130 Mo. 614; Lynch v. Murphy, 119 Mo. 169; Bergman v. St. Louis, 88 Mo. 683; Senn v. Railroad, 124 Mo. 627. Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of enactments to maintain their validity; infraction of such a requirement must be plain and obvious to be recognized as fatal. State v. Whitaker, 160 Mo. 69.

GANTT, J.—This is a prosecution by the city of St. Louis against the defendant, for violation of section 18 of ordinance 20808 of said city. The defendant was fined and appealed to the St. Louis Court of Criminal Correction. The third count in the information is as follows: "It is further charged that T. Liessing, the defendant aforesaid, on the 14th day of January, 1903, and on divers other days and times prior thereto, did, opposite 3027 S. Broadway, in the city of St. Louis and State of Missouri, then and there control, carry and expose for sale milk, which said milk did show on analysis less than seven-tenths of one per cent ash, the said ash being estimated by weighing the residue after incineration of the total solids at a dull red heat until all the organic matter had been destroyed. Contrary to the ordinance in such cases made and provided." A motion was made by the defendant to quash this information on twelve different grounds as follows:

"1. Because the statement filed herein against the defendant charges the defendant with no violation of the city ordinance.

"2. Because the charge herein contained in said statement is so indefinite, vague and uncertain that no valid judgment can be rendered under the same against the defendant.

"3. Because the ordinance upon which the prosecution is based and predicated is unconstitutional and void in that it is repugnant to the provisions of section 28, article 4, of the Constitution of the State, and also of section 13, article 3, of the charter of the city of St. Louis in that said ordinance contains more than one subject and the subject-matter of said ordinance is not clearly expressed in the title to the same.

"4. Because said ordinance is unconstitutional and void for the reason that the same is unreasonable in the provisions and it is practically impossible to comply with and enforce the same.

"5. Because said ordinance is unconstitutional and void for the reason that it is repugnant to section 4, article 2, and section 30, article 2, of the Constitution of this State, in that it deprives the defendant of his natural rights to liberty and enjoyment of the gains of his own industry and of his property and liberty without due process of law.

"6. Because the ordinance is unconstitutional and void in that it is inconsistent with the statutes of this State.

"7. Because said ordinance is unconstitutional and void in that it is beyond the power of the Municipal Assembly of the city to enact the same.

"8. Because said ordinance is unconstitutional and void in that the charter of the city of St. Louis contains no express grant to the Municipal Assembly of the city to enact the same.

"9. Because said laws and ordinance on which

this prosecution is based are void and unconstitutional in that they were enacted under and contain an unlawful delegation of power.

"10. Because the laws and ordinance in question are void and unconstitutional in that they are class legislation and provide for taxation under the form and name of a license.

"11. Because said ordinance as a whole is void and in violation of section 28, article 3, of the charter of St. Louis, in that section 27 and 29 of said ordinance are in conflict with the general ordinance of a prior date, to-wit, article 9, chapter 11, of Ordinance 19991, which ordinance has not been repealed in express terms by the ordinance under which this prosecution is brought.

"12. Because said ordinance is void and unconstitutional for the reason that it is repugnant to section 1, article 14, of the amendments of the Constitution of the United States in that it deprives the defendant of his liberty and property without due process of law and denies him the equal protection of the law."

Section 18, of Ordinance 20808 of the city of St. Louis is as follows:

"Section 18. No milk shall be sold, kept, offered or exposed for sale, stored, exchanged, transported, conveyed, carried or delivered, or with such intent as aforesaid be in the care, custody, control or possession of anyone, unless it show on analysis not less than three per cent by weight of butter fat, eight and five-tenths per cent solids not fat, and seven-tenths of one per cent ash, of which fifty per cent shall be insoluble in hot water. Provided, however, that in contested analysis of milk condensed under this ordinance, butter fat shall be estimated gravimetrically by the Adams Paper Coil process; total solids by evaporation, and non-fatty solids by difference between total solids and butter fat,

and ash by weighing the residue after incineration of total solids at a dull red heat until all the organic matter is destroyed. Anyone violating any one of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof be punished by a fine of not less than twenty-five dollars nor more than one hundred dollars for each and every offense.''

The testimony of Milk Inspector Comer showed that the defendant was on the day charged in the information delivering milk in his regular milk wagon at 1227 South Broadway, St. Louis; the inspector ''took a sample of milk from his wagon,'' or rather in his presence from the customer to whom he had just sold the same, and gave as a reason why he did not take it from the can in the defendant's wagon was because the defendant dumped some cream into the can before the inspector could get a chance to take a sample out of the can. This sample, with proper precaution to preserve same in proper condition, was turned over to the city chemist for analysis on the same day within an hour or two. City Chemist Walter Bernays testified as to the identity of the sample, and that it was received by him on the same day it was taken by the inspector. About twelve o'clock he made the analysis, and testified that this milk contained ''sixty-five one hundredths per cent of ash.'' Doctor Bernays described the method used to determine the ash as follows: ''Weigh accurately a platinum dish, add approximately five cubic centimeters of milk, weigh the platinum dish plus the milk accurately; that gives the weight of the milk; evaporate in water both to apparent dryness brought to constant weight, thus determining the total solids. The dish containing the total solids is placed in a larger nickel dish and the whole heated at a low heat somewhat less than a dull red until all the organic matter is destroyed and the ash perfectly white. I tested the heat to see that there was no chloride of sodium and potassium.

I did this by heating a weighted quantity of pure sodium chloride and potassium in the same manner and ascertained there was no loss of weight. . . . In other words the method used for determining the ash is accurate; there is no loss." He further testified that there was another method known, which, however, "is a modification of the same method in which before incineration some nitric acid is added to facilitate incineration" and that with this exception, "it is the same identical method." On cross-examination he defined "ash" to be the mineral constituent of milk left after all the organic matter is destroyed by incineration. He stated that he followed the ordinance and incinerated the total solids in the analysis of the sample of defendant's milk to a dull red heat until all the organic matter was destroyed. He explained that there were other methods of ascertaining the amount of ash in milk, but there was no decided difference in the results, and that they must give practically the same results, though there might be a very slight difference. He also testified that compared with the average cow's milk, the amount of ash required by the ordinance was below the average.

The defendant on his part called three experts, Gottschalk, Richter and Keiser. There were some discrepancies between their testimony and that of Dr. Bernays on scientific points. Gottschalk testified that other methods might be used than that prescribed by the ordinance to determine the per cent of ash. The one he thought the most reliable was a long method not ordinarily carried out on that account. In his opinion, as well as the other two experts, the test imposed by the ordinance was not the best. None of them, however, testified as to any facts in this case, nor did the defendant call any witness to contradict any of the city's testimony as to the actual facts. At the conclusion of the testimony the defendant asked an instruction in the nature of a demurrer to the evidence which was over-

ruled and defendant excepted. He then prayed the court to give the following instructions:

"The court sitting as a court instructs the court sitting as a jury that the ordinance upon which the statement in this case is based is unconstitutional and void and for that reason this suit cannot be maintained, and the verdict of the court sitting as a jury must be for the defendant.

"The court sitting as a court instructs the court sitting as a jury that the ordinance upon which the statement in this case is based is invalid for the reason that it is unreasonable as a matter of law and as shown to be by the evidence in this case, and the court sitting as a jury must find and return a verdict for the defendant," which were denied and the defendant duly excepted.

As already said, the court found the defendant guilty of violation of the ordinance and fined him twenty-five dollars and costs. In due time the defendant filed motions for new trial and in arrest of judgment, which were overruled, and exceptions saved, and an appeal allowed to this court. This appeal is in this court on two grounds, first, because the city of St. Louis, a political subdivision of the State, is a party to the action; and, second, because the constitutionality of the St. Louis milk ordinance is directly challenged and involved in the determination of this appeal.

I. The ordinance upon which this prosecution is based is challenged as unconstitutional on various grounds and we will endeavor to examine them seriatim. It is first said that the production, sale and distribution of milk is a legitimate and lawful occupation, conducted as a matter of right and not as a privilege, and that unusual and arbitrary restrictions cannot be lawfully imposed upon it by ordinance, nor can harsh, expensive and burdensome provisions be enacted against persons engaged in an innocent and useful business so as to de-

prive them of the right to devote their property thereto and destroy their freedom and liberty.

The ordinance assailed has for its subject-matter the inspection of milk and cream and the regulation of the sale thereof. It is obviously a police regulation to guard against the sale or dissemination of an unwholesome and injurious quality of milk and cream and to protect the public against imposition, fraud and deception as to an article of food almost universally used by the people. The city of St. Louis, as has been repeatedly declared by this court, derives its charter in pursuance of constitutional provisions and the police powers delegated therein are conferred by the State upon the municipality, and so long as they are not inconsistent with the Constitution and laws of the State they are valid upon all who come within their scope and authority. [St. Louis v. Fischer, 167 Mo. 654, 194 U. S. 361; Kansas City v. Oil Co., 140 Mo. 458.] By the express provision of section 26, article 3, of the charter of St. Louis, authority is given "for the inspection of butter, cheese, milk, lard and other provisions," and "to secure the general health of the inhabitants by any measure necessary," and "to pass all such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures." None of the objects sought to be secured by the charter are of more importance than the health of its inhabitants, and ordinances having such in view have been often upheld as an exercise of the police power of the State delegated to the city. [St. Louis v. Galt, 179 Mo. 8-18; Ferrenbach v. Turner, 86 Mo. 416; Smith's Mod. L. Mun. Corp., sec. 1322, et seq.; Crossman v. Lurman, 192 U. S. 189.] The provisions of the Federal Constitution, invoked by appellant, were not designed to interfere with the exercise of the police power by the States, and they have not shorn the States of their police power to

St. Louis v. Liessing.

regulate trades and occupations so as to guard against injury to the public, nor of regulating the use of property so as to prohibit that which is injurious and dangerous to the community. [St. Louis v. Fischer, 167 Mo. 654; State v. Addington, 77 Mo. 110; State v. Bockstruck, 136 Mo. 335; Powell v. Com., 114 Pa. St. 265; Powell v. Pennsylvania, 127 U. S. 678.] Perhaps on no one subject has this police power been affirmed as often as the right to inspect and regulate the sale of milk and cream. Numerous decisions of courts of last resort sustain the right of cities, in safe-guarding the health of their citizens and in the prevention of deception upon them, by fixing a reasonable standard of purity, to be scientifically ascertained, of milk and cream sold within their limits and prohibiting the sale of milk of the quality inferior to that required by such municipal standard. When the courts have come to deal with such municipal regulation they have announced the rule that if the article is universally conceded to be so wholesome and innocuous that the court may take judicial notice of it, the Legislature under the Constitution has no right to absolutely prohibit it, but if there is a dispute as to the fact of its unwholesomeness for food or drink then the Legislature can either regulate or prohibit it. The constitutionality of the law is not to be determined upon a question of fact in each case, but the courts determine for themselves upon the fundamental principles of our Constitution that the act of the Legislature or municipal assembly is not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. [State v. Layton, 160 Mo. 498-499, and cases cited.] Subject to the foregoing qualification the courts start out with a presumption in favor of an act of the General Assembly or the municipal authorities passed for the regulation and inspection of food products. It

will scarcely be asserted that all milk is so wholesome
and nutritious that there can be no doubt in the mind
of the court of its wholesomeness.  To do so would be
to deny our common experience, and to condemn
legislation on this subject in almost every State in the
Union.  In People v. Cipperly, 37 Hun 324, LEARNED,
P. J., announced that the court not take judicial notice
whether milk below the standard is or is not unwhole-
some or dangerous to the public health.  In that case the
defendant took the ground that the Legislature of New
York could not under the Constitution prohibit the sale
of milk drawn from healthy cows which in its natural
state fell below the standard fixed by the act, unless
such milk, or articles made from it, was in fact unwhole-
some or dangerous to the public health.  The learned
justice asked the question, "Is that to be a question
for the jury?  If so, the court must charge the jury,
in each case, that if they find milk below the standard
to be unwholesome, then the statute is constitutional;
if they find it to be wholesome, then the statute is un-
constitutional.  Evidently a constitutional question can-
not be settled, or rather unsettled, in that way; the con-
stitutionality would vary with the varying judgments
of juries.  Either then the legislature can forbid the sale
of milk below a certain standard, or else cannot do this
whether such milk be in fact wholesome or not.  If they
may fix a standard, they must judge whether or not milk
below that standard is wholesome.  The court cannot
review that judgment."  His views were adopted by
the Court of Appeals in the same case in 101 N. Y. 634.
That it was within the legislative power he adds: "It
may be known to the legislature that certain kinds of
foods produce different degrees of richness in milk, and
it may be known to the legislature that certain kinds
of foods will cause a great flow of watery milk, and it
may be known by the legislature that this watery milk
supplied as food to children cheats them with an appear-

ance of nourishment and deprives them of that nutritious food which they need. It may be known to the legislature that milk below the standard which was fixed by this law is unsuitable for food and should not be sold. At any rate, all that is a matter for the legislature." And the learned judge applies the test that the courts may declare a law unconstitutional when it appears on its face that it is not intended to promote the public health and would have no such results, but that a law fixing the standard for the purity of milk on its face is evidently intended for the public health, and such being the case it was within the legislative power to enact it.

That case is in entire harmony with the decision of this court in State v. Layton.

In State v. Campbell, 64 N. H. 402, a statute prohibiting the sale of adulterated milk and providing that milk should be deemed adulterated whenever it showed on analysis over 87 per cent water or under 13 per cent milk solids, was sustained by the Supreme Court, and this though the defendant offered to show that pure milk from his cows showed less than the required solids. The court said: "The statute tends to discourage the breeding of a certain class of cattle for the supply of the milk market. The difficulty of guarding against the adulteration of milk may have influenced the legislature in fixing a standard of richness. Practically it makes no difference whether milk is diluted after it is drawn from the cow, or whether it is made watery by giving her such food as will produce milk of an inferior quality, or whether the dilution, regarded by the legislature as excessive, arises from the nature of a particular animal or a particular breed of cattle. The sale of such milk is a fraud which the statute was designed to suppress. It is a valid exercise of the police power for the prevention of fraud and the protection of the public health, and is constitutional." And the court

quoted with approval from LEARNED, P. J., in People v. Cipperly, 37 Hun 324.

In State v. Smyth, 14 R. I. 100, a statute fixing the standard of milk at not over 88 per cent water, not less than 12 per cent solids, and not less than two and one-half per cent milk fats, and providing that milk not of that standard shall be deemed adulterated, was sustained by the Supreme Court of the State, the court saying: "It is equally a fraud on the buyer whether the milk was originally good and has been deteriorated by water, or whether in its natural state it is so poor that it contains the same proportion of water as that which had been adulterated. Again, since it may sometimes happen, though we presume infrequently, that milk as it comes from the cow is below the standard of quality, it would be difficult to prove that its poor quality was due to adulteration, although in a large majority of cases such would probably be the fact. By putting such milk in the same category with adulterated milk, the prosecution is relieved from the difficulty," etc. It was held further that the law was not unconstitutional on the ground that it was unequal and partial in its operation and discriminated in favor of owners of cows which gave rich pure milk and against owners of cows giving milk of inferior quality.

Without repeating the reasoning of the courts it must suffice to say that the same principle is announced in Weigand v. District of Columbia, 22 App. Cas. (D. C.) 559; State v. Fourcade, 45 La. Ann. 717; State v. Dupaquier, 46 La. Ann. 577; State v. Stone, 46 La. Ann. 147; Deems v. Mayor of Baltimore, 80 Md. 164; Blazier v. Miller, 10 Hun 435; Norfolk v. Flynn, 101 Va. 473; State v. Smith, 69 Ohio St. 196; Commonwealth v. Proctor, 165 Mass. 38; People v. Kibler, 106 N. Y. 321; State v. Schlenker, 112 Iowa 642.

So that the validity and constitutionality of the ordinance as a police regulation in its general character-

istics and its general scope and purpose rest upon satisfactory reasons as well as upon the great weight of authority in this country.  The specific provision, the validity of which is in question in this case, is that part of section 18, prohibiting the sale of milk showing an' analysis of less than seven-tenths of one per cent of ash. This in effect is the same as fixing the amount of milk fats, or solid matter, that the milk must contain, which is one of the nutritious ingredients in milk, and the diminution of which deteriorates the quality of milk in a corresponding degree.  Authorities above cited are all in harmony on the proposition that it is perfectly competent in the interest of the health of a community to fix the standard of quality, and there is nothing unreasonable or oppressive in the ordinance in that respect.

II.  The specific objection to the ordinance made by the defendant is that it commits to the will of a single officer practically absolute power in controlling this necessary article of food.  It may be seriously doubted whether this objection is open for review in the condition of the pleadings and evidence, inasmuch as section 18 is the only portion of the ordinance involved in the pleadings or proof, or motion for a new trial, but as the case is thoroughly briefed on both sides on this proposition, we do not deem it amiss to consider this objection, at this time.

Referring to this first section of the ordinance providing that the inspection shall be placed in charge of the city chemist, in connection with section 18, it is plain that the fixing of the legal standard to which all milk is subjected is not left to the city chemist, but was adopted by the Municipal Assembly itself, and not only so, but the method and the standard by which milk is to be tested is also fixed as a definite rule of action by which all persons dealing in milk are to be governed. Dealers in milk would unquestionably have a much more valid grievance if each case had to be submitted to

the police justice or a jury to determine the standard of milk according to their own ideas and making their individual judgment a standard of right and wrong. The ordinance as passed instead of leaving the standard of milk to the caprice of the city chemist contains a permanent legal provision which operates generally and impartially for its enforcement. The fact that the city chemist has charge with the duty of analyzing all milk submitted to him by the various inspectors in no sense deprives the seller of milk of any constitutional right. It was pointed out by the Supreme Court of the United States, in St. Louis v. Fischer, 194 U. S. 361, that it was perfectly competent to delegate such a power as is conferred upon the city chemist by this ordinance to a single individual. In Wilson v. Eureka City, 173 U. S. 32, an ordinance providing that no person should move any building into or upon any of the public streets, etc., without a written permission of the mayor, or president of the city council, or in their absence a councillor, was challenged on the ground that it committed the rights of the plaintiff to the unrestricted discretion of a single individual and thereby removed them from the domain of the law, but the Supreme Court of the United States held that the ordinance was valid and was based on the necesity of the regulation of rights by uniform and general laws; and in Gundling v. Chicago, 177 U. S. 183, an ordinance of the city of Chicago authorizing the issue of a license by the mayor of the said city, to sell cigarettes, and forbidding their sale without license, was held no violation of the Federal Constitution, and the amount of the tax named for the license was in the power of the State to fix. In that case the contention was that the ordinance vested arbitrary power in the mayor to grant or refuse such license, and that such arbitrary power was a violation of the 14th amendment to the Constitution of the United States, but the court held that it was not an unusual case that discretion

should be lodged by law in public officers or bodies to grant or withhold licenses to keep divers other places for the sale of spirituous liquors and the like, when one of the conditions is that the applicant should be a fit person for the exercise of the privilege and the fact of such offenses submitted to the judgment of an officer or board named.   Nowhere in the ordinance before us is an analysis of the city chemist made conclusive of the quality of the milk sold or offered for sale by a dealer in milk, but the particular section challenged in this case simply provides one uniform standard of quality of milk and for a uniform test in case of contested analysis of milk condemned under this ordinance.   The owner of the milk is in no manner deprived of his right to contest the analysis of the city chemist, but it is his right and privilege when prosecuted for violation of this section to have his milk tested by other competent chemists and by the same standard, so that it cannot be said that such dealers are deprived of due process of law in the protection of their personal rights of property.   [State ex rel. Shivers v. Newton, 45 N. J. L. l. c. 475, 476.]

The validity of the provision providing for the inspection of milk violates no law or constitutional right of the defendant; the registration fee exacted for the conducting of the milk business is only one dollar per annum, and the occupation tax is only two dollars and a half for each six months of the year, and twenty-five dollars for wholesalers.   It is apparent that there is nothing oppressive in the amount of the registration fee or the occupation tax.   In State v. Dupaquier, 46 La. Ann. 577, an ordinance of the city of New Orleans requiring vendors of milk to the public to furnish gratuitously on application of the sanitary inspector samples of milk not exceeding one-half pint for inspection and analysis, was held not unconstitutional as forcing dairymen to furnish evidence against themselves or as taking pri-

vate property for public use without compensation. In that case the decision in Com. v. Carter, 132 Mass. 12, was freely quoted from. In the latter case it was held that a statute of Massachusetts authorizing inspectors of milk to enter all carriages used in the conveyance of milk, and whenever they have reason to believe any milk found therein is adulterated, to take specimens thereof for the purpose of analyzing or otherwise satisfactorily testing the same, was constitutional, the court saying, "Private property is held subject to the exercise of such public rights, for the common benefit; and in the case of licensed dealers in merchandise, the injury suffered by inspection is accomplished by advantages which must be regarded as a sufficient compensation. [Bancroft v. Cambridge, 126 Mass. 438.]"

Such a seizure of milk for the purpose of examination is a reasonable method of inspection and does not require a warrant; it is a supervision under the laws by a public officer of a trade which concerns the public health, and is within the police power of the commonwealth. [Com. v. Ducey, 126 Mass. 269.]

In State ex rel. Shivers v. Newton, 45 N. J. L. 469, it was held that the 9th section of the act which conferred upon the city inspector of milk power to condemn, pour upon the ground or return to the consignor any milk which he finds upon inspection to be adulterated, was constitutional, and it was further held that the provision as to the analysis of milk was not intended to operate as a rule of evidence to be conclusive of the guilt of the defendant in selling adulterated milk, but it was simply intended to prohibit the sale of milk under a certain standard of excellence, and this exercise of authority was within the police power of the city.

III. The learned counsel for the defendant has attacked various and sundry other provisions of this ordinance outside of section 18 under which this prosecution was begun and has been maintained. Section 18 is

clearly severable from any other provision of this ordinance concerning which there can be any doubt, and can be enforced independently of any of the other provisions attacked. The rule is well settled in this State that where certain provisions of ordinances or law are assailed which of themselves are valid and are severable from and not dependent upon invalid parts, the whole enactment will not be declared void because of such invalid portions, provided this will not defeat the general object of the enactment. We must decline to investigate and decide upon the validity of various provisions of this ordinance to which counsel have referred us because in our opinion section 18 is a valid provision and susceptible of enforcement without any reference to such other section of the ordinance. [State v. Bockstruck, 136 Mo. 335.]

IV. It is insisted, however, that this ordinance is unconstitutional and invalid for the reason that it contains more than one subject and the subject-matter of said ordinance is not clearly expressed in the title of the same. In City of Tarkio v. Cook, 120 Mo. 1, 7, it was held that the constitutional provision of this State that no bill should contain more than one subject, which should be clearly expressed in the title, was intended to apply only to State legislation and has no application to ordinances of cities; but section 13 of article 3 of the charter of St. Louis is also invoked. Conceding, as we do, that the charter must control, it is perfectly obvious, we think, that this ordinance is not violative of this charter provision. The title of the ordinance is an ordinance to license and regulate the sale of milk and cream, to provide for the inspection thereof and prescribe penalties to prevent the sale and distribution of any but pure, wholesome milk and cream, and to fix the minimum limit of its composition and defining its quality, being ordinance number 20808, approved August 27, 1902. All the provisions of the ordinance are ger-

mane to the one subject of regulating the business of vending milk and cream, and the generality of the title is not an objection so long as it is not made to cover legislation incongruous in itself. Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of enactments to maintain their validity. There is but one subject to this ordinance and that is clearly expressed in the title. [St. Louis v. Weitzel, 130 Mo. 600; State v. Whitaker, 160 Mo. 59.]

V. Again the defendant asserts that this ordinance 20808 is void because it conflicts with the former general ordinance not expressly repealed, to-wit, ordinance 17157, or sections 478, 481, 483, 484, 519, 522 of the municipal code, such expressed repeal of inconsistent or conflicting ordinances being required by section 28 of article 3 of the city charter. Ordinance 17157 was not offered in evidence or referred to in any way in the criminal court, nor is it referred to in the motion for new trial. Nothing is better settled in this State than that courts will not take judicial notice of the ordinances of municipalities. [City of St. Louis v. Roche, 128 Mo. 1. c. 544, and cases there cited.] It is plain, therefore, that if ordinance 20808 is in any manner in conflict with that ordinance it was not made to appear in the trial of the case, and this court cannot consider it.

VI. But learned counsel of the defendant while urging that ordinance 20808 is invalid because it does not expressly repeal ordinance 17157, asserts that the latter ordinance is unconstitutional and void because the mode and manner of the appointment of the city chemist is not in compliance with the provisions of the charter, sections 2, 5, 7, 8, 9, 11, 14, of article 4, placing the appointing power in the mayor and city council and nowhere else. His contention is based upon the fact that section 478 of the municipal code creates the office of city chemist and provides that he shall be appointed by the mayor *with the approval of the board of health* and

subject to confirmation by the city council.  The insistence is that because the ordinance requires the approval of the board of health in the appointment of the city chemist it violates the charter provision.  Several answers suggest themselves to this proposition.  Sections 478 to 485, inclusive, of the municipal code, creating the office of city chemist, were not introduced in evidence; therefore, strictly speaking, they are not before us for review, but if they are, and conceding all that counsel claims they are, we think there is no merit in the contention.  By that ordinance the city chemist is appointed by the mayor and confirmed by the council, just as the charter requires, and the charter does not anywhere prohibit other qualifications which may be deemed necessary by the municipal assembly.  The mere fact that he should be approved by the board of health, in addition to the other qualifications provided by the charter, certainly in no manner disqualifies him.  If that requirement was contrary to the charter it would simply be void, but would not effect the other legal steps which were followed in his appointment in pursuance of the charter, but certainly it does not lie in the mouth of the defendant in this case to object that greater qualifications were required and demanded of the city chemist than provided by charter, and the same may be said of the other point that under section 484 the removal of this officer differs from that pointed out in the charter, since the ordinance itself says that he should be subject to all the laws and regulations governing city officers; that the municipal assembly had the right to create the office of city chemist, and define his duties under sections 28 and 45 of article 4 of the charter, and to provide for his removal, section 26 of article 3 of the charter, there can be no sort of question.

VII.  The information was and is sufficient.  It specifically advised defendant of the time and place and the particular in which he had violated the ordinance.

St. Louis v. Grafeman Dairy Co.

Nothing more definite was necessary to apprise the defendant of the nature of the complaint against him. The testimony was sufficient to justify the court in finding for the plaintiff, and outside of the attack on the validity of the ordinance, there was practically no defense. That the defendant sold milk at the time and place charged which fell below the legal standard there can be no reasonable doubt. We hold the ordinance to be a valid exercise of the police power conferred upon the city and not open to any of the objections urged against it, and the judgment is accordingly affirmed.

*Brace, C. J., Marshall, Burgess, Valliant, Fox* and *Lamm, JJ.,* concur.